CHARLES D'ARRIGO, PLAINTIFF–APPELLANT, v. NEW JERSEY STATE BOARD OF MEDIATION AND BERGEN COUNTY UTILITIES AUTHORITY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 20, 1988—Decided October 18, 1988.

Before Judges DREIER and BROCHIN.

*Manuel A. Correia,* argued the cause for appellant (*Locke & Correia,* attorneys; *Manuel A. Correia,* on the brief).

*Paul J. Giblin,* argued the cause for respondent Bergen County Utilities Authority (*Giblin & Giblin,* attorneys; *Irving C. Evers,* of counsel and on the brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for State Board of Mediation (*Michael S. Bokar,* Senior Deputy Attorney General, on the Statement).

The opinion of the court was delivered by

DREIER, J.A.D.

Plaintiff, Charles D'Arrigo, appeals from a judgment of the Chancery Division dismissing his complaint. Plaintiff had sought a direction to the State Board of Mediation to provide a list of arbitrators for plaintiff's claim against his former employer.

On November 27, 1985, plaintiff was suspended by his employer, the Bergen County Utilities Authority. Mr. D'Arrigo had worked for the Authority since 1983, and was a member of the Utility Workers Union of America. The collective bargaining agreement signed by the Union and the Authority provides that if any grievance is not settled by a specified three-step grievance procedure,[1] an arbitrator, selected through the New Jersey State Board of Mediation, would decide the case. After plaintiff's suspension, the Union requested a hearing. At the request of Mr. D'Arrigo, the initial hearing date was rescheduled from December 2 to December 10, so his lawyer could be present. However, on December 10, Mr. D'Arrigo appeared without his lawyer, and "relied on the union". The Authority's personnel officer was the hearing officer, and he upheld the discharge, whereupon the Authority gave Mr. D'Arrigo his final notice of discharge on December 12, 1985.

In April and July of 1986, plaintiff, then represented by counsel, requested another hearing before the Authority, which was scheduled for the week of September 8, 1986. Apparently the new hearing was never held, as Mr. D'Arrigo's attorney

---

[1] The first two steps of the grievance procedure require the employee to take his complaint within ten days to his supervisor, who then has ten days to respond. If the employee is still not satisfied, he is required to take his complaint, in writing, to the Chief Engineer within ten days of receiving the Supervisor's answer. The Chief Engineer also has ten days to respond. That provides for a maximum possible period between occurrence and final answer of forty days. The third step of the grievance procedure calls for a "meeting" between the Union, the employee, and the Authority's Chief of Personnel. This meeting is also called the "hearing" in the Agreement.

received a letter from the Authority dated September 10, 1986 notifying Mr. D'Arrigo that

[t]he Union has indicated ... that ... the Union is processing Mr. D'Arrigo's grievance to final and binding arbitration. I expect to receive within the next week or two a list of arbitrators.

Mr. D'Arrigo thereafter made three written requests for the list of arbitrators, on October 30, December 12, and December 26, 1986. The "only response" was a March 17, 1987 letter from the Authority to Mr. D'Arrigo's attorney stating that "[i]t was the unanimous opinion of the [Authority's board of] commissioners that they would not offer Mr. D'Arrigo reinstatement."

On April 20, 1987 plaintiff filed a grievance petition for arbitration and again on July 9, 1987 requested the list of arbitrators. Thereafter on October 22, 1987 plaintiff instituted this action by obtaining an order directing defendants to show cause on November 19, 1987 why the Board should not be ordered to provide a list of arbitrators. The Authority did not appear on that date, and the court postponed the hearing until December 2, 1987.

On December 2, 1987, the trial court heard the attorneys for the Authority and the plaintiff. The Board appeared solely by way of a letter to the court from the Attorney General's office, stating that it was not the policy of the Board to provide lists of arbitrators to individual plaintiffs. The Authority argued that neither the plaintiff nor the union had filed a grievance, and therefore the plaintiff could not avail himself of the arbitration procedure. The Authority further urged that even if the grievance had been filed or waived, plaintiff had not processed his grievance within the time limits stated in the Agreement.

The plaintiff argued that the Agreement explicitly authorized him to proceed with arbitration as an individual;[2] moreover,

---

[2]The Agreement in Article VII(3) provides:

throughout the two years since his dismissal there was either a representation or at least a semblance of the grievance being processed.

In denying the plaintiff's request that he order the Board to produce a list of arbitrators, the trial judge stated that he was "... not satisfied that [he had] the authority to direct the State Board of Mediation to take the action requested...." The judge further stated that he took into consideration the time periods in question, and that in his opinion plaintiff's arbitration claim had not been timely made. As plaintiff challenges these conclusions, we will treat both of them.

According to the administrative regulations governing the Board, its "... rules shall be deemed a part of an arbitration agreement between parties whenever in their collective bargaining agreements ... they have provided for arbitration through the New Jersey State Board of Mediation or under its rules." *N.J.A.C.* 12:105–1.1(a). The collective bargaining agreement in question expressly provides for arbitration through the Board.

The parties shall use the New Jersey Board of Mediation for the purpose of selecting an arbitrator to hear and decide the grievance.

The rules of the Board further state that "upon receipt of a demand or submission for arbitration, the board shall submit simultaneously to the parties an identical list of 10 names chosen from the panel...." *N.J.A.C.* 12:105–3.1.

Defendants argue, agreeing with the trial judge, that as plaintiff is not a party to the contract, we should sustain the Board's "long standing policy" to deny requests for arbitration from an individual who is not a party to the contract. Also, even if the plaintiff is allowed to process his grievance through the arbitration process, he did not do so within the time limits specified in the Agreement, and he is therefore barred from proceeding through arbitration now.

Nothing contained in this Article shall limit the right of an employee to process his or her own grievance [provided the Union is notified and has the right to be present, and any result does not violate the Agreement].

Defendants cite *N.J.A.C.* 12:105–1.2(c), in support of the Board's interpretation. The regulation states that all rules other than those which relate to an arbitrator's powers, "shall be interpreted by an authorized representative of the board." We recognize that an agency's interpretation of a statute which it is responsible to enforce is given great weight. *Metromedia, Inc. v. Dir. Div. of Taxation,* 97 *N.J.* 313, 327–328 (1984); *Schuenemann v. Board of Review,* 208 *N.J.Super.* 48, 51–52 (App.Div.1986). Such power, however, cannot be read as authorizing a representative of the Board to interpret the regulations contrary to law to defeat the substantive rights of an employee, employer or union. *Cf. Smith v. Dir. Div. of Taxation,* 108 *N.J.* 19, 26 (1987); *MBL Holding Corp. v. State,* 215 *N.J.Super.* 418, 425 (App.Div.1987).

Defendants rely further on *Red Bank Educ. Ass'n. v. Red Bank Reg. High School Bd. of Educ.,* 78 *N.J.* 122 (1978). In *Red Bank,* a teacher's association won the right to bring grievances for employees in the name of the Union. *Id.* at 122. The *Red Bank* opinion, however, concentrates on a problem which is the exact opposite of the one facing this court. The Court decided that a union could represent the complaint of an individual, noting that: "[we are] not faced with any limitation on the ability of the employees to present or process grievances personally...." *Id.* at 135. The issue before us, on the other hand, is whether an individual can process the grievance personally, without the Union. The Court in *Red Bank* merely "assumed *arguendo* ... that an individual employee has a statutory right to present his grievances personally ... and is free to choose to do so." *Id.* at 136. As authority for this proposition the Court referred to *N.J.S.A.* 34:13A–5.3, and the *N.J. Const.* (1947), Art. I, par. 19, *id.* at 136, neither of which authorities directly bear on the case before us.

█ Plaintiff buttresses his claim of entitlement to receive a list of arbitrators from the Board by noting the express language of the Agreement. Article VII states:

3. Nothing in this Article shall limit the right of the employee to process his ... own grievance.

While the Authority agrees that *Red Bank* recognizes a concurrent right of an employee to present a grievance with his union, it claims that the "right of an employee to individually proceed to arbitration" is not so recognized. We note that the Authority provides no citation for this last statement. However, plaintiff in his reply brief draws our attention to authority exactly contrary to defendant's assertion. According to *Fagliarone v. Consolidated Film Industry,* 20 *N.J.Misc.* 193 (Cir.Ct.1942), aff'd o.b. 131 *N.J.L.* 315 (E. & A.1944), if an agreement between an employer and a union expressly grants each employee the right to arbitrate discriminatory discharge claims, the discharged employee, as a third party beneficiary, can maintain proceedings to require the employer to arbitrate the question of discrimination. The authority for this proposition is the predecessor statute to *N.J.S.A.* 2A:24–3, not cited by either party to the case before us, which provides:

> Where a party is aggrieved by the failure, neglect or refusal of another to perform under a written agreement providing for arbitration, the superior court ... may in a summary action direct that the arbitration proceed in the manner provided for in the agreement. The party alleged to be in default may demand a jury trial as to the issue that there has been no agreement in writing for an arbitration or that there has been no failure to comply therewith.

The interpretation of this statute by the former highest court of the State as including the right of an aggrieved individual union member to proceed to arbitration must take precedence over the Board's interpretation to the contrary. We recognize that the facts in the case before us are not as strong as in *Fagliarone* where there was an express provision permitting an employee to arbitrate. Nevertheless, here there is at least an express provision permitting the employee to process his own grievance, and the grievance procedure includes arbitration. We therefore see no valid basis to distinguish *Fagliarone.*

As a second reason why the plaintiff should not be permitted to proceed with arbitration of his complaint, the Authority

argues that the plaintiff has failed to comply with the Agreement's express time limitations. The trial judge agreed.

We have previously determined that whether a claim for arbitration was made within a reasonable time is to be resolved by the arbitrators along with the merits of the claim. *Mahony–Troast Construction v. Supermarkets Gen'l.*, 189 *N.J.Super.* 325, 331 (App.Div.1983). In *Mahony*, we noted that *Sussleaf-Flemington, Inc. v. Bruce*, 84 *N.J.Super.* 599 (App.Div.1964), stated the opposite view, but asserted "[w]e are satisfied, however, that the cases upon which the *Sussleaf* court relied ....no longer express the majority or modern view." *Id.* at 331.

Notwithstanding the general proposition, with which we agree, that the arbitrator should generally determine a question of timeliness, we also recognize the rule that an arbitrator who has accepted the matter as one to be determined in accordance with an agreement must follow the law applicable to the agreement's interpretation and validity. A mistake in the law controlling an arbitration is grounds for vacating an award. *N.J.S.A.* 2A:24–8d; *Perez v. American Bankers Ins. Co. of Florida*, 81 *N.J.* 415, 420 (1979); *William J. Burns Intern. Det. Agency Inc. v. New Jersey Guards Union Inc.*, 64 *N.J.Super.* 301, 312 (App.Div.1960), certif. den. 34 *N.J.* 464 (1961). Where, however, the question is debatable, a reviewing court would be bound by the arbitrator's decision. *Selected Risks Ins. Co. v. Allstate Ins. Co.*, 179 *N.J.Super.* 444, 451 (App.Div. 1981). Our task therefore is to determine whether an arbitrator could reasonably hold that the claim for arbitration, presented so long after the 30–day period provided in the Agreement, was still viable.

At the end of the initial hearings where plaintiff was unsuccessful, he could have proceeded pursuant to the contract to assert his grievance through arbitration. As noted earlier, the Authority gave plaintiff his final notice of discharge on December 12,

1985. We assume that he requested rehearings in April and July. The rescheduling of the rehearing for the week of September 8, 1986 was an acknowledgment by the Authority that the grievance that plaintiff allegedly (and mistakenly) understood had been filed immediately thereafter was then not so late as to preclude arbitration. The Authority's letter of September 10, 1986 notifying plaintiff that the Union was processing plaintiff's grievance to final and binding arbitration and that a list of arbitrators was expected within a week or so, was also a strong indication to plaintiff that his claim was under active consideration and that no further action was required on his part.

It is clear that an employer can be found estopped from relying upon "unexhausted grievance and arbitration procedures as a defense to the employee's cause of action" if the employer itself is the cause of the delay. *Vaca v. Sipes*, 386 *U.S.* 171, 186, 87 *S.Ct.* 903, 914, 17 *L.Ed.*2d 842, 855 (1967).[3] The question here is whether an arbitrator could find that plaintiff proceeded with reasonable diligence in light of these facts, and most importantly the September 10, 1986 letter he received from the Authority, when his grievance petition was not filed until April 20, 1987.

While this record is sparse and the considerable lapse of time may affect any damages to which plaintiff may be entitled, we cannot say that arbitration is precluded under the circumstances of this case, *i.e.*, that plaintiff was informed in writing by his employer that his Union was processing the grievance and that the employer also expected to receive the list of arbitrators. The Authority certainly knew that no grievance had been filed, since it had not received a copy of the grievance required to be

---

[3]We realize that plaintiff may also have a claim against the Authority and Union if plaintiff's contractual rights have been violated by them, and we were informed at oral argument that there is such a claim now pending before the Public Employees Relations Commission.

served upon it by the Agreement and administrative regulations. *N.J.A.C.* 12:105–2.1(a). An arbitrator may determine that plaintiff was guilty of laches and, having slept on his rights, is entitled to no award. But an arbitrator also may determine that the actions of the employer estopped it from relying upon the time limitation in the Agreement. We cannot say as a matter of law that either finding would be beyond the arbitrator's power. *Mahony–Troast Construction v. Supermarkets Gen'l., supra,* 189 *N.J.Super.* at 331.

 The last issue presented is whether the trial court under these circumstances had jurisdiction to direct the State Board of Mediation to process plaintiff's claim. Plaintiff's complaint sought relief only against the State Board of Mediation. It was, in effect, an appeal from the decision of the Board not to provide the list of arbitrators. Ordinarily such an action is by way of direct appeal to this court. *R.* 2:2–3(a)(2). This was not a suit pursuant to *N.J.S.A.* 2A:24–3, quoted earlier, to compel the Authority to arbitrate.[4] The narrow issue presented required no facts that could not have been presented to the Appellate Division on an appeal from the State Agency's decision. At this late date, however, and considering that the matter is now before us, it would serve no purpose to dismiss the matter and require a new appeal to be filed in this court. There is no question that this court has the power to direct the State Board of Mediation to forward the names of arbitrators in accordance with the Agreement and regulations *N.J.A.C.* 12:105–1.1(a) and 3.1. This we will do. After an arbitrator is selected, the arbitrator may then determine whether the Authority is or is not estopped from raising plaintiff's lack of compliance with the time requirements of the Agreement. Furthermore, if an award is entered the arbitrator may decide whether the Authority is or is not entitled to an off-set for any

---

4As we noted earlier, plaintiff as a third-party beneficiary under the express terms of the contract possessed the right to bring an action to compel arbitration under this statute. *See Fagliarone v. Consolidated Film Industry, supra.*

additional delays chargeable to plaintiff or the Union, or conversely whether plaintiff should be left solely to his administrative or civil remedies against the Union, Authority or both for breach of any duty of representation.

The decision appealed from is reversed and the Board of Mediation is directed to issue a list of arbitrators to plaintiff and the Authority as demanded. Costs on this appeal shall abide the eventual resolution of the arbitration proceeding.