242 N.J. Super. 83 (1990)
576 A.2d 28
ENERTRON INDUSTRIES, INC., AND FRIGID, INC., PLAINTIFFS-APPELLANTS,
v.
DAVID C. MACK, ACTING ADMINISTRATOR OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION AND DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1990.
Decided June 25, 1990.
*85 Before Judges GAULKIN, DREIER and D'ANNUNZIO.
Robert W. Beattie argued the cause for appellants (Weg and Myers, attorneys).
Stuart J. Lieberman, Deputy Attorney General, argued the cause for respondents (Robert J. Del Tufo, Attorney General, attorney; Michael R. Clancy, Assistant Attorney General, of counsel).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
Plaintiffs brought this action in lieu of prerogative writs to compel arbitration of their claims for compensation under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. See N.J.S.A. 58:10-23.11n. On the parties' cross-motions, the Law Division denied plaintiffs' application to compel arbitration and granted defendants' motion to dismiss the complaint. Plaintiffs appeal.

*86 I.
The substantive question presented by the appeal is whether plaintiffs' claims are barred under N.J.S.A. 58:10-23.11k, which requires them to be filed "not later than one year after the date of discovery of damage."
Plaintiffs, manufacturers of electric heaters and fans, occupied leased space in a warehouse at 140 Thomas Street in Newark. On April 11, 1983 the warehouse was damaged by a fire originating in space occupied by another tenant, Vista Warehousing, Inc. By letter of June 9, 1983, the Newark Fire Department advised plaintiffs that "hazardous conditions" existed at the warehouse, including "dangerous chemicals which are stored... on these premises ... [which] present a definite health and safety hazard due to [their] toxicity and flammability." The letter instructed plaintiffs that "[u]ntil this situation is abated no business should be conducted at this location."
According to plaintiffs, they "were denied meaningful access to the building from April 1983 to October 1984." During that 18-month period, they had access only to the ground floor. In September 1984, they authorized the Department of Environmental Protection (DEP) to enter the premises "for the purpose of securing samples to determine the presence of PCBs." By letter of October 18, 1984, counsel for DEP advised that plaintiffs would have to "be evacuated during the cleanup of the warehouse" and were allowed "approximately 2 weeks in which to make whatever arrangements are necessary to transfer your operations." Apparently plaintiffs vacated the premises shortly thereafter; on December 7, 1984 DEP denied plaintiffs' request to enter the warehouse "for the purpose of removing stored materials."
On December 10, 1984 plaintiffs filed their initial claim with the administrator of the Spill Compensation Fund. See N.J.S.A. 58:10-23.11i et seq. The claim identified Vista Warehousing, Inc. as the owner of "the potentially hazardous chemicals" *87 and described "the causes of the damage or loss of income" as follows:
As a result of a fire on 11th April, 1983 certain potentially hazardous chemicals were found in the space occupied by Vista Warehousing, Inc., in the premises known as 140 Thomas St., Newark. Since that time, access to the premises have either been severely restricted or prohibited, by either the Fire Dept., or the DEP. Access is still prohibited, and the claimant continues to incur losses.
The claim asserted $1,500,000 in income losses, allocated as follows:

 April-July 1983 $200,000
 August-October 1983 $300,000
 November 1983-January 1984 $300,000
 January-March 1984 $200,000
 April-July 1984 $200,000
 August-October 1984 $300,000

The claim stated that those losses resulted because plaintiffs had "suffered continually from either restricted, or at times, prohibited entry into its premises." The restricted or prohibited access led to substantial reductions in plaintiffs' manufacture and sale of electric heaters in 1983 and 1984 and prevented them from bidding for additional orders.
On July 8, 1985 plaintiffs filed a second claim, which repeated "the causes of the damage or loss of income" as in the original claim but asserted additional losses after October 1984. Those losses included vandalism damage to machinery after "our forced evacuation" ($245,000), damages to inventory resulting from DEP's consolidation of inventory "with no amount of reasonable care" ($150,000), continuing loss of profits from December 1984 through April 1985 ($396,680) and losses "as a result of our inability to warehouse ... imported fans" between April and July 1985 ($300,000).
For more than 2 1/2 years after the filing of the second claim, defendants requested a variety of additional documentation in order to "evaluate" and "process" the claims. Plaintiff responded to those requests, but apparently not to defendants' satisfaction. Finally, on January 6, 1988, plaintiffs requested arbitration of their claim pursuant to N.J.S.A. 58:10-23.11n. *88 By letter of February 19, 1989, defendants refused to proceed to arbitration until all the requested documentation was submitted and "until such time as the Major Fraud Unit of the New Jersey Department of Law and Public Safety, Division of Criminal Justice, Office of the Attorney General has completed an investigation it is currently conducting on this claim."
On April 4, 1988, plaintiffs filed this action to compel defendants to submit the dispute to arbitration. On plaintiffs' motion for summary judgment brought shortly thereafter, defendants responded that arbitration was not appropriate because the administrator "has not yet made a decision concerning the validity or amount of plaintiffs' damage claim." Accordingly, on November 1, 1988, the Law Division judge ordered defendants to "render a decision on the claim of the plaintiffs on the documentation as filed ... and notify plaintiffs of that decision .... [by] December 14, 1988."
In keeping with that order, defendants issued their Damage Claim Denial on December 14. After summarizing the two claims, the document set forth the following findings and conclusions:
3. The Spill Compensation and Control Act requires that claims against the Spill Fund be filed not later than one year from the date of discovery of damage [N.J.S.A. 58:10-23.11k].
4. In its claim form, the Claimant indicates at Section 7 that the discharge that caused the alleged damages specified in Paragraph 2 above occurred at 140 Thomas Street, Newark, New Jersey, on April 11, 1983. At section 11C of the claim form the Claimant stated that it began to experience the subject damages in April of 1983.
5. According to information obtained by the Fund, the Claimant filed a claim with its insurance carrier, Aetna Insurance Company ("Aetna"), for damage incurred as a result of the discharge on November 30, 1983, and that negotiations with Aetna in connection with the claim began as early as May 26, 1983.
6. In various deposition and trial testimony, the officers of the Claimant have stated that they were aware of damage, specifically their inability to continue production at the facility due to the discharge, as early as one month after the discharge.
7. Accordingly, the instant claim was filed on December 10, 1984, more than one year after Claimant's discovery of damage.
NOW, THEREFORE:

*89 8. Frigid Inc./Enertron Industries' claim (# 85-25) for compensation is hereby denied.
9. This decision constitutes final agency action.
10. The Spill Fund is denying this claim on the basis of the Statute of Limitations [N.J.S.A. 58:10-23.11k]. The Fund is taking no position on whether the claimant suffered any damage or, if so, the amount of the damage.
Plaintiffs again moved for an order compelling arbitration; defendants cross-moved to dismiss the Law Division complaint. Following argument, the Law Division judge held that the December 14, 1988 decision was a "final administrative agency action" and plaintiffs' "recourse is an appeal to the Appellate Division." He denied plaintiffs' motion to compel arbitration and granted defendants' motion to dismiss "because [plaintiffs are] in the wrong place, now they should go to the Appellate Division based on the final administrative agency action." Plaintiffs appeal from the April 14, 1989 order memorializing that ruling.

II.
The Law Division judge erred in dismissing the complaint because plaintiffs were "in the wrong place." The prerogative writs action was properly filed in the Law Division, for it was in lieu of mandamus to compel agency action. Cf. Montclair Tp. v. Hughey, 222 N.J. Super. 441, 446-48, 537 A.2d 692 (App.Div. 1987); Colon v. Tedesco, 125 N.J. Super. 446, 450-52, 311 A.2d 393 (Law Div. 1973). Once defendants issued what they characterized as their "final agency action" on December 14, 1988, the litigation ought to have been transferred to the Appellate Division. R. 1:13-4; Atlantic City Mun. Utilities Authority v. Hunt, 210 N.J. Super. 76, 84, 509 A.2d 225 (App.Div. 1986). We shall accordingly treat the matter as though it had been transferred to us rather than dismissed. Id.

III.
We find that the timeliness of plaintiffs' claims cannot be determined on the present record. To be sure, plaintiffs knew *90 of the fire on or shortly after April 11, 1983. They also knew from the June 9, 1983 Newark Fire Department letter that "dangerous chemicals" were on the premises and that their business operations therefore had to be curtailed. Moreover, plaintiffs claimed that their losses began in April 1983 and had already mounted to $500,000 by October 1983. But those facts alone do not require the conclusion that plaintiffs' initial claim, filed December 10, 1984, came more than "one year after the date of discovery of damage" within the meaning of N.J.S.A. 58:10-23.11k.
Neither the legislative history nor any reported cases discuss the meaning of "discovery of damage." But see In the Matter of NL Industries, Inc., 240 N.J. Super. 162, 572 A.2d 1177 (App.Div. 1990) (determining when "damage" in fact occurred). However, an extensive body of New Jersey case law has established and defined our "discovery rule," under which accrual of a cause of action is delayed "`until the injured party discovers, or by the exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim.'" Vispisiano v. Ashland Chemical Co., 107 N.J. 416, 419, 527 A.2d 66 (1987) (quoting Viviano v. CBS, Inc., 101 N.J. 538, 546, 503 A.2d 296 (1986), quoting Lopez v. Swyer, 62 N.J. 267, 272, 300 A.2d 563 (1973)). We think it fair to infer that the Legislature contemplated that "discovery rule" principles would be applicable in determining "the date of discovery of damage." We reject plaintiffs' suggestion that N.J.S.A. 58:10-23.11k should be read as permitting claims to be made at any time for continuing damages discovered within the preceding year. So read, the statute would not fix a limitations period at all but would only limit the recoverable damages. There is no reason to believe the Legislature intended the Fund to have such an unusual open-ended exposure. To the contrary, the primary aim of the Spill Compensation and Control Act  to control the discharge of hazardous substances "by requiring the prompt containment and removal of such pollution and substances" (N.J.S.A. 58:10-23.11a)  would be subverted if persons *91 who "discovered" or should have "discovered" compensable damage were not required to make prompt claim, thereby permitting remedial and preventive action to be taken.
The "date of discovery of damage" thus is the date plaintiffs discovered or should have discovered that they might have a basis for a claim against the Fund (Vispisiano, 107 N.J. at 419, 527 A.2d 66) or, stated differently, the date they learned or should have learned "of that state of facts which [might] equate in law with a cause of action." Burd v. N.J. Tel. Co., 76 N.J. 284, 291, 386 A.2d 1310 (1978) (emphasis in original). Plaintiffs' knowledge must be evaluated in light of the requirements of the cause of action they assert.
The Fund is liable for costs and damages arising from a "discharge" of "hazardous substances." N.J.S.A. 58:10-23.11g provides in relevant part that the Fund
shall be strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages no matter by whom sustained, including but not limited to:
(1) the cost of restoring, repairing, or replacing any real or personal property damaged or destroyed by a discharge, any income lost from the time such property is damaged to the time such property is restored, repaired or replaced, and any reduction in value of such property caused by such discharge by comparison with its value prior thereto.
"Discharge" and "hazardous substances" are defined in sub-paragraphs (h) and (k) of N.J.S.A. 58:10-23.11b:
h. "Discharge" means any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State, when damage may result to the lands, waters or natural resources within the jurisdiction of the State;
* * * * * * * *
k. "Hazardous substances" means the "environmental hazardous substances" on the environmental hazardous substance list adopted by the department pursuant to section 4 of P.L. 1983, c. 315 (C. 34:5A-4); such elements and compounds, including petroleum products, which are defined as such by the department, after public hearing, and which shall be consistent to the maximum extent possible with, and which shall include, the list of hazardous substances adopted by the federal Environmental Protection Agency pursuant to section *92 311 of the federal Water Pollution Control Act Amendments of 1972, Pub.L. 92-500, as amended by the Clean Water Act of 1977, Pub.L. 95-217 (33 U.S.C. § 1251 et seq.); the list of toxic pollutants designated by Congress or the EPA pursuant to section 307 of that act; and the list of hazardous substances adopted by the federal Environmental Protection Agency pursuant to section 101 of the "Comprehensive Environmental Response, Compensation and Liability Act of 1980," Pub.L. 96-510 (42 U.S.C. § 960 et seq.); provided, however, that sewage and sewage sludge shall not be considered as hazardous substances for the purposes of this act.[1] [Footnotes omitted].
Plaintiffs' knowledge of the presence of "dangerous chemicals" does not necessarily indicate their awareness that a "discharge" of "hazardous substances" had occurred. Indeed, the present record does not establish whether or when such a discharge ever occurred, or whether multiple discharges may have occurred. Cf. South Orange v. Hunt, 210 N.J. Super. 407, 418-19, 510 A.2d 62 (App.Div. 1986). Moreover, plaintiffs contend that the restricted access to their premises imposed by the Newark Fire Department from April 1983 to October 1984 prevented them from determining the facts which might equate in law with a cause of action against the Fund. They also point out that DEP described its October 1984 evacuation order as necessary to accommodate "the cleanup which will require the opening and sampling of thousands of unidentified chemical containers"; even at that late date, plaintiffs suggest, DEP itself did not know whether there had been any "discharge" of "hazardous substances."[2]
*93 We cannot presume to say what facts might establish or negate "discovery of damage" within the meaning of N.J.S.A. 58:10-23.11k. The inquiry calls for thorough exploration of the facts and close judgment as to their legal implication. See, e.g., Graves v. Church & Dwight Co., Inc., 115 N.J. 256, 558 A.2d 463 (1989). Plaintiffs had no opportunity to address the issues, for the administrator declared their claim time-barred on its face. Plaintiffs are entitled to a determination based on all relevant facts and circumstances. Cf. Lopez, 62 N.J. at 274-76, 300 A.2d 563.

IV.
The final question is who shall determine "the date of discovery of damage" in the first instance. Plaintiffs urge that N.J.S.A. 58:10-23.11n(a) requires that issue, together with all other disputes bearing on the "validity or amount" of their claims, to be decided by a board of arbitration. Defendants respond that the timeliness of the claims does not bear on their "validity," that a board of arbitration thus has no jurisdiction, that the Fund administrator should decide the question and that, if a hearing is required, the administrator could refer the matter to the Office of Administrative Law for initial decision.
We are persuaded that the limitations issue should first be heard and determined by a board of arbitration convened by the administrator. N.J.S.A. 58:10-23.11n(a), (b). The statute states no exceptions in ceding to the board of arbitration all contests as to the "validity" of claims. Defendants' bare assertion that the limitations questions does not bear on the "validity" of the claim contradicts the plain language of the statute: a rejection of the claim as time-barred is surely a determination *94 of its "validity." Cf. South Orange, 210 N.J. Super. at 419, 510 A.2d 62.[3]
The board of arbitration is granted full power to order testimony under oath, to subpoena witnesses and to compel the production of documentary materials. N.J.S.A. 58:10-23.11n(d). All decisions of the board must be in writing. N.J.S.A. 58:10-23.11n(f). Board determinations are final and appealable of right to the Appellate Division. N.J.S.A. 58:10-23.11n(g). While we need not now determine our scope of review of board determinations, we note that a number of cases have held that judicial review of an arbitration award is constitutionally required where the arbitration is mandated by statute. Republic Industries, Inc. v. Teamsters Joint Council, 718 F.2d 628, 640 (4th Cir.1983), cert. denied, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); Revenue Prop. Lit. Cases v. Cohn, Delaire & Kaufman, 451 F.2d 310, 313-14 (1st Cir.1971); Woodland Private Study Group v. State of N.J., 616 F. Supp. 794, 808-10 (D.N.J. 1985), dismissed as moot on other grounds, 846 F.2d 921 (3rd Cir.1988). Compare N.J.S.A. 2A:24-8 (judicial confirmation or vacation of contractual arbitration awards). We accordingly expect that a full record of the arbitration proceedings will be made and that the board of arbitration will set forth comprehensive findings of fact and conclusions of law as part of its written decision.
The order dismissing the complaint is reversed. The matter is remanded to the administrator, who shall convene a board of arbitration pursuant to N.J.S.A. 58:10-23.11n to determine the timeliness of plaintiffs' claims as well as any other disputes properly put before the board.
*95 DREIER, J.A.D. (concurring and dissenting).
While I largely concur with the well-reasoned opinion of the majority, I take issue with one point. Since it materially affects the standards to be applied by the arbitrators after the remand, I must respectfully dissent from a portion of Part III of the majority opinion.
I read N.J.S.A. 58:10-23.11k in a manner different from the majority. In this case if there had been no spill of hazardous materials prior to December 10, 1983 (one year prior to the date of the filing of plaintiff's Spill Act notice), my reading might well be a distinction without real difference. I would determine, however, that even if there had been a discharge of hazardous materials prior to December 10, 1983, plaintiff would not be barred from claiming damages from the Spill Fund for damages occurring after that date.
I see such an interpretation as one which protects the Spill Fund from many claims which might be made if the majority's interpretation is adopted. For example, under the majority's interpretation of the statute, if a company knows there has been a small discharge of a hazardous substance, and over the ensuing year finds that the spill has caused only minor damage the cost of which can be absorbed in the company's operations, prudence would dictate the filing of a claim to protect against later and potentially greater damage. Such later damage would be rendered noncompensable, unless the claim were filed within one year from the date of discovery of the first damage. In the case before us, plaintiff may be lucky, in that the initial damage to its business may not have been caused by an actual discharge of hazardous substance, and thus the principle I espouse may be inapplicable. Yet, if it is shown that plaintiff knew of a significant discharge at the time the Newark Fire Department restricted its access to the premises, but felt that since it could continue its operations and would absorb such losses, that initial decision could have a disastrous effect. Under the majority's theory, that decision could prevent plaintiff *96 from successfully claiming against the Spill Fund for the forced cessation of plaintiff's operations as a result of the later DEP order.
I see no public purpose served by such interpretation of the statute. Do we want corporate counsel throughout the State advising their clients to be sure to make Spill Act claims within one year of discovery of damage from even the most minor discharge of hazardous materials, lest the client be precluded from making a claim at some later period if greater damages ensue? It appears to make more sense, and to do no violence to the statute, to say that the claim need not be made until after damage has occurred for which the claimant really seeks recompense, and the one-year period runs from the discovery of the damage which is the subject of the claim, irrespective of any earlier damage which may be barred by the statute.
I believe that my interpretation of the statute has foundation in the wording of the statute and its amendment by L. 1984 ch. 142 § 3. The first sentence of N.J.S.A. 58:10-23.11k, prior to the amendment, read as follows (the bracketed portion was deleted by the 1984 amendment):
Claims shall be filed with the administrator not later than one year after the date of discovery of damage [nor later than six years after the date of the incident which caused the damage].
The Statement of the Senate Energy Environment Committee accompanying Assembly Bill No. 1704, which became L. 1984 ch. 142, explained this portion of the amending statute:
These changes ... (4) remove the six year statute of limitations for filing a claim against Spill Fund for damages. Currently a claim must be filed within 6 years after the date of the incident which caused the damage. This amendment does not change, however, the requirement to file a claim within one year of the discovery of the damage.
I note that the Assembly Statement viewed the deleted six year period, as the "statute of limitations."[1] The one-year period only limits the contents of the claim.
*97 I agree with the majority that the principles underlying the discovery rule apply in all of these cases. In fact, the phrase here under discussion apparently was included to protect a claimant from the statute of limitation's adverse impact of a hidden discharge of a hazardous substance. The 1984 deletion of the six year limitation apparently had the same public interest in mind. Considering the beneficial purposes of the Spill Fund, is it likely that the Legislature meant to lay a trap for the unwary potential claimant, or even a public-spirited claimant who was willing to absorb some inconveniences for the first year's damages caused by the spill of a hazardous substance, but who thereafter found it necessary to seek recompense for later-occurring damages? I think not.
My colleagues assert that the interpretation that I espouse would create "open-ended exposure." Supra, at 90. Further they feel that the purposes of the Act "would be subverted if persons who `discovered' or should have `discovered' compensable damage were not required to make prompt claim, thereby permitting remedial and preventive action to be taken." (at 90-91, 576 A.2d at 32). I see no "open-ended exposure." There is exposure only until one year following the occurrence of damage to a claimant. The statute is unusual in that it focuses upon the damage not on the incident, that latter focus having been deleted by the 1984 amendment. But the statute effectively bars only that damage occurring prior to one year before the claim is filed.
As to the second criticism, I note that the purposes of the statute were only partially quoted by the majority. N.J.S.A. 58:10-23.11a indeed looks to the prompt containment and removal of hazardous substances. But it further states that the establishment of the Spill Fund is intended to provide "for swift and adequate compensation to resort businesses and other *98 persons damaged by such discharges." The potential limitation of such claims by a narrow reading of the "discovery of damage" language, would violate the principle that remedial legislation such as this is to be expansively interpreted to achieve its beneficial ends.
I reiterate that by expressing my disagreement with the majority on this narrow point, I in no way imply that plaintiff is or should be barred under the majority's interpretation. As noted by the majority with my concurrence, the arbitrator may well determine that there is no such bar. I merely would put different issues before the board of arbitration. As noted at the outset, with the exception of this single point of disagreement, I heartily concur with the balance of the majority opinion.
NOTES
[1] The parties have not addressed, and we find it unnecessary here to determine, whether the Fund is liable for costs or damages associated with the removal of "hazardous substances" which have not been "discharged." See N.J.S.A. 58:10-23.11f(b) and N.J.S.A. 58:10-23.11g(c), permitting DEP to remove, at the responsible party's cost, certain hazardous substances not yet discharged. But cf. Atlantic City Mun. Utilities Authority, 210 N.J. Super. at 96-97, 509 A.2d 225.
[2] In State, DEP v. Signo Trading Intern., 235 N.J. Super. 321, 562 A.2d 251 (App.Div. 1989), certif. granted, 118 N.J. 227, 570 A.2d 980 (1989), a case determining insurance coverage available to the owner of 140 Thomas Street for the April 11, 1983 fire, a DEP representative had filed an affidavit reporting the conditions he observed after the fire. As summarized in this court's opinion, the affidavit described only improper storage of "hazardous material"; in July 1983, however, DEP and Newark filed a civil action against the owner alleging that "hazardous substances" had been "discharged." Id. 235 N.J. Super. at 324, 562 A.2d 251. None of those matters appear in the present record.
[3] We note that, in labor and commercial arbitrations, the majority and modern view is that the arbitrator should generally determine the question of timeliness along with the merits of the claim. See D'Arrigo v. State Bd. of Mediation, 228 N.J. Super. 189, 196, 549 A.2d 451 (App.Div. 1988), reversed on other grounds 119 N.J. 74, 574 A.2d 44 (1990); Mahony-Troast Construction Co. v. Supermarkets General Corp., 189 N.J. Super. 325, 331, 460 A.2d 149 (App.Div. 1983).
[1] I also note that in describing the one year period the statement does not focus upon the absence of the article "the" in the phrase "date of discovery of damage," which might be read as implying any damage, rather than merely the damage which was the subject of the claim. The Committee Statement refers to this period as "one year of the discovery of the damage." [Emphasis added].