692 A.2d 54

COMMERCE BANK, N.A., PLAINTIFF–APPELLANT–CROSS–RE-
SPONDENT, v. DIMARIA CONSTRUCTION, INC., DEFENDANT-
RESPONDENT–CROSS–APPELLANT (TWO CASES).

Superior Court of New Jersey
Appellate Division

Argued January 29, 1997—Decided April 17, 1997.

Before Judges LONG, SKILLMAN and CUFF.

*Joseph H. Blum* argued the cause for appellant-cross-respondent (*Frey, Petrakis, Deeb & Blum,* attorneys; *Mr. Blum, Norman W. Briggs* and *William B. Jameson,* on the brief).

*Ellis I. Medoway* argued the cause for respondent-cross appellant (*Archer & Greiner,* attorneys; *Mr. Medoway,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This appeal requires us to consider the principles which govern the determination of whether a court or arbitrators should decide questions regarding the timeliness of a demand for arbitration or the satisfaction of other conditions of arbitration.

In December of 1993, defendant DiMaria Construction, Inc. (DiMaria) entered into two contracts with plaintiff Commerce Bank, N.A. (Commerce) to supervise and manage the construction of interior offices and the installation of heating and air conditioning units in Commerce's commercial office building in Mount Laurel Township. Each contract included a schedule for the completion of construction. On April 14, 1994, Commerce sent a notice to DiMaria terminating both contracts on the ground that DiMaria had breached the interior office contract by failing to complete construction in a timely manner.

During the following months, the parties exchanged correspondence regarding the termination of the contracts. When the parties were unable to settle their dispute, DiMaria submitted a demand for arbitration on October 21, 1994. Commerce then filed the first of the two actions involved in this appeal, seeking to enjoin the arbitration on the ground that DiMaria had failed to satisfy two conditions precedent to the right to arbitrate, namely, filing a claim within twenty-one days of the "occurrence" giving rise to its claim and obtaining a decision from the project architect. DiMaria responded by filing a motion to dismiss and a cross-motion for counsel fees. The trial court denied Commerce's application to enjoin the arbitration and dismissed the counts of the complaint implicated in this appeal.[1] The trial court concluded that under the arbitration clause contained in both contracts the arbitrators had the responsibility to pass upon Commerce's contention that DiMaria failed to satisfy the conditions precedent to arbitration. The court also denied DiMaria's application for counsel fees.

The arbitrators conducted hearings on twenty-two days over a six month period. Following the testimony of eleven witnesses and the introduction of more than 230 exhibits, the arbitrators rendered a decision, which concluded:

---

[1] Commerce subsequently dismissed the remaining count, relating to counsel fees, without prejudice.

A. It is the opinion of the Tribunal that this contract was ended in a wrongful manner by Commerce Bank, N.A., .... As a result of this wrongful dismissal the Contractor of record "Di Maria Construction, Inc.", ... was harmed in a number of ways. Primarily they were placed in a position where other contracts were unavailable due to a lack of bonding ability and a lack of funds necessary to purchase material. Other harms were the loss of faith by subcontractors and material suppliers and the damage to the Corporate name relative to non-payment and suits against [Di Maria] by others related to this project.

B. This Tribunal has found that conditions precedent were not a factor in this case and therefore did not prevent the case from proceeding to a decision.

Accordingly, the arbitrators awarded DiMaria $205,270 for the interior office and HVAC contracts, $49,650 "related to all other contractual topics" and $69,554.66 for counsel fees.

Following the award, Commerce filed its second action, which sought to vacate the arbitration award on the ground that it was the product of "fraud, corruption or similar wrongdoing," and DiMaria filed a counterclaim seeking confirmation. The trial court rejected Commerce's challenge and confirmed the arbitration award. The court also denied DiMaria's application for counsel fees.

Commerce filed separate appeals from the dismissal of its actions seeking to enjoin the arbitration hearing and to vacate the arbitration award. DiMaria filed cross appeals from the denial of its claims for counsel fees. We consolidated the appeals.

I

On the appeal from the dismissal of its action seeking to enjoin arbitration, Commerce argues that the trial court erred in concluding that the arbitration clause in the contracts conferred responsibility upon the arbitrators to determine whether DiMaria satisfied the conditions precedent to arbitration.[2] Commerce re-

---

[2] Commerce also argues that DiMaria waived its right to arbitration because it did not make a demand for arbitration until six months after Commerce's termination of the contract. However, the parties entered into a tolling agreement to preserve their rights to pursue arbitration only six weeks after termination of the contract. Therefore, this argument is clearly without merit. *R.* 2:11–3(e)(1)(E).

lies upon cases such as *Jersey Cent. Power & Light Co. v. Local Union No. 1289 of Int'l Bhd. of Elect. Workers,* 38 N.J. 95, 102–03, 183 A.2d 41 (1962) and *Laborers' Local Union Nos. 472 & 172 v. Interstate Curb & Sidewalk,* 90 N.J. 456, 463, 448 A.2d 980 (1982), which hold that a court ordinarily must make the threshold determination whether the parties to a contract have agreed to submit a particular dispute to arbitration. The rationale for this rule is that because a party may be compelled to submit a dispute to arbitration only if it has agreed to this alternative form of dispute resolution, the question whether a contract requires a particular dispute to be submitted to arbitration—sometimes referred to as "substantive arbitrability," *Standard Motor Freight, Inc. v. Local Union No. 560, Int'l Bhd. of Teamsters,* 49 N.J. 83, 96, 228 A.2d 329 (1967)—is "an issue for judicial determination." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 656 (1986). Consequently, arbitrators may decide whether a particular dispute is within the scope of the parties' agreement to arbitrate only if "an express contract provision" confers such authority. *Laborers' Local Union Nos. 472 & 172 v. Interstate Curb & Sidewalk, supra,* 90 N.J. at 463, 448 A.2d 980; *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 994 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so," (quoting *AT & T Techs., Inc. v. Communications Workers of Am., supra,* 475 U.S. at 649, 106 S.Ct. at 1418–19, 89 L.Ed.2d at 656)).

However, once it is decided that the subject of a particular dispute is within the scope of an agreement to arbitrate, any question as to whether a party has satisfied the procedural preconditions of arbitration, such as the timeliness of a demand for arbitration,—sometimes referred to as a question of "procedural arbitrability," *Standard Motor Freight, Inc. v. Local Union No. 560 Int'l Bhd. of Teamsters, supra,* 49 N.J. at 97, 228 A.2d 329—generally should be decided by arbitrators rather than a court.

*John Wiley & Sons, Inc. v. Livingston,* 376 *U.S.* 543, 555–59, 84 *S.Ct.* 909, 917–19, 11 *L.Ed.*2d 898 (1964); *PaineWebber, Inc. v. Elahi,* 87 *F.*3d 589 (1st Cir.1996); *Conticommodity Servs., Inc. v. Philipp & Lion,* 613 *F.*2d 1222, 1224–27 (2nd Cir.1980); *Enertron Indus., Inc. v. Mack,* 242 *N.J.Super.* 83, 94 n. 3, 576 *A.*2d 28 (App.Div.1990); *D'Arrigo v. New Jersey State Bd. of Mediation,* 228 *N.J.Super.* 189, 196, 549 *A.*2d 451 (App.Div.1988), *rev'd on other grounds,* 119 *N.J.* 74, 574 *A.*2d 44 (1990); *Mahony–Troast Constr. Co. v. Supermarkets Gen. Corp.,* 189 *N.J.Super.* 325, 331, 460 *A.*2d 149 (App.Div.1983). The essential rationale for this rule is that "where the parties have clearly agreed to arbitrate the subject of the underlying dispute between them, . . . it is unlikely that they intended other issues related to the dispute, such as the timeliness of the submission of the claim, to affect the 'arbitrability' of the dispute." *PaineWebber, Inc. v. Elahi, supra,* 87 *F.*3d at 599. Moreover, " 'the fact that something is a condition precedent to arbitration does not make it any less a procedural question' to be determined by the arbitrator." *Id.* at 600–01 n. 12 (quoting *Local 285, Serv. Employees Int'l Union, AFL–CIO v. Nonotuck Resource Assocs.,* 64 *F.*3d 735, 740 (1st Cir.1995)). Therefore, unless the contract expresses a contrary intent, the presumption is that parties intend such procedural questions to be decided by the arbitrator. *Id.* at 598–99.

We recognize that this court held in *Moreira Constr. Co. v. Township of Wayne,* 98 *N.J.Super.* 570, 238 *A.*2d 185 (App.Div.), *certif. denied,* 51 *N.J.* 467, 242 *A.*2d 15 (1968), that a trial court should decide whether a party demanded arbitration within the time required by the contract. However, the arbitration clause involved in *Moreira* conferred only limited powers upon the arbitrator; only one party to the contract could invoke arbitration and even that party's right to arbitrate "rested on a carefully circumscribed set of conditions." *Id.* at 576, 238 *A.*2d 185. We contrasted this narrow arbitration clause with "[c]lauses of that universality of coverage . . . common in commercial agreements." *Ibid.* Consequently, *Moreira* is consistent with our more recent decisions which hold that, absent an expression of a contrary

intent in the contract, any question whether a party has made a timely demand for arbitration should be decided by arbitrators rather than by a court. *See Enertron Indus., Inc. v. Mack, supra; D'Arrigo v. New Jersey State Bd. of Mediation, supra; Mahony–Troast Constr. Co. v. Supermarkets Gen. Corp., supra;* but *cf. Brick Township Mun. Utils. Auth. v. Diversified R.B. & T. Constr. Co.,* 171 *N.J.Super.* 397, 402–04, 409 *A.*2d 806 (App.Div. 1979).

In its action to enjoin the arbitration, Commerce argued that DiMaria was barred from arbitrating any claim relating to the termination of the contracts because it did not file a claim with the project architect and failed to seek arbitration within twenty-one days of termination. Commerce relied upon section 4.3.2 of the contracts, which provides in pertinent part:

> Claims, including those alleging an error or omission by the architect, shall be referred initially to the architect for action as provided in Paragraph 4.4. A decision by the architect, as provided in Subparagraph 4.4.4 shall be required as a condition precedent to arbitration ... of a claim between the contractor and owner.

Commerce also relied upon section 4.3.3, which provides:

> Claims by either party must be made within twenty-one (21) days after occurrence of the event giving rise to such claim or within twenty-one (21) days after the claimant first recognizes the condition giving rise to the claim, whichever is later.

The contracts do not expressly indicate whether a dispute relating to a party's compliance with sections 4.3.2 and 4.3.3 should be decided by a court or by arbitrators. Therefore, the arbitrability of such a dispute requires reference to the general arbitration clause of the contracts, which provides that:

> Any Controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

Because the dispute as to whether DiMaria complied with sections 4.3.2 and 4.3.3 relates to procedural preconditions of arbitration, we must construe this arbitration clause in light of the presumption that parties to a contract providing for arbitration intend the arbitrators to decide such procedural questions. *See Paine-Webber, Inc. v. Elahi, supra,* 87 *F.*3d at 598–99.

The arbitration clause requires the submission to arbitration of not only "any claim" but also "[a]ny controversy ... arising out of or related to the Contract, or the breach thereof." The term "any controversy" is ordinarily understood as having a broader meaning than simply "any claim" and to include any dispute between the parties relating to the contract. *See Wojcik v. Aetna Life Ins. & Annuities Co.*, 916 *F.Supp.* 729, 732 (N.D.Ill.1996); *see also USX Corp. v. West*, 781 *S.W.2d* 453, 455–56 (Tex.Ct.App.1989). This expansive view of the meaning of "any controversy" is reinforced by the fact that the arbitration clause involved in this case applies to any controversy "related to" the contract or any alleged breach. This reading of the arbitration clause also furthers this State's strong policy of minimizing the role of courts in the arbitration process. See *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.*, 135 *N.J.* 349, 640 *A.2d* 788 (1994). Consequently, we conclude that the parties' dispute as to whether DiMaria satisfied the procedural preconditions of arbitration of its claim arising out of Commerce's alleged breach of the contract constituted a "controversy ... related to the Contract, or a breach thereof."

This conclusion is directly supported by *Board of Library Trustees, Shaker Heights Pub. Library v. Ozanne Constr. Co.*, 100 *Ohio App.*3d 26, 651 *N.E.2d* 1356 (1995), which involved the same standard form construction contract entered into between Commerce and DiMaria. In *Ozanne*, the owner of a building refused to arbitrate a contractor's claims on the ground that the contractor had failed to give the architect timely notice of those claims. However, the court characterized the arbitration clause of the contract, which was identical to the one involved in this case, as "extremely broad and unlimited as to the nature of disputes that are subject to arbitration." *Id.* at 1358. In view of the strong presumption in favor of arbitrability, the court concluded that "[i]t cannot be said 'with positive assurance' that the disputes at issue ... did not 'arise out of' or 'are not related to the Contract, or the breach thereof.'" *Ibid.* Similarly, the trial court correctly construed the general arbitration clause in the contracts between

Commerce and DiMaria to require the arbitrators to decide whether DiMaria was foreclosed from arbitrating because it did not file a claim with the architect or demand arbitration within twenty-one days of termination of the contracts.

## II

█   On the appeal from the judgment confirming the arbitration award, Commerce argues that the award is "so outrageous" that it had to have resulted from "fraud, corruption or similar wrongdoing." In particular, Commerce attacks the award of $69,554.66 for the counsel fees incurred in the proceedings and $49,650 for "all other contractual topics," such as lost profits on other contracts DiMaria was unable to secure due to a loss of bonding capacity, lack of capital required to purchase materials and damage to its corporate name. Commerce also attacks the requirement that it pay 10% interest on the amount of the award until it is paid in full.

Even if Commerce's attack upon the arbitration award would have been maintainable under prior New Jersey law, see *Perini v. Greate Bay Hotel & Casino, Inc.*, 129 *N.J.* 479, 496, 610 *A.*2d 364 (1992), it is clearly without merit under the standard of judicial review endorsed in *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., supra*, 135 *N.J.* at 349, 640 *A.*2d 788. In *Tretina*, the Court held, quoting Chief Justice Wilentz' concurrence in *Perini*, that "[b]asically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators." *Id.* at 358, 640 *A.*2d 788. Chief Justice Wilentz' concurrence clearly states that a court should confirm an arbitration award even though the award is not based on the principles of law which would be applied in the courts of New Jersey or any other jurisdiction:

The very purpose of committing a dispute to arbitration is to get away from the judiciary, to get away from the strictures and limitations of law, . . .

[I]f nothing is said in the agreement, the arbitrators may use any standards they want to reach a just and equitable result, unrestricted by any law or laws, required only to be honest and to attempt to the best of their ability, based on their knowledge and experience to achieve a just and equitable result.

[*Perini v. Greate Bay Hotel & Casino, Inc.*, *supra,* 129 *N.J.* at 542–43, 610 *A.*2d 364.]

Commerce argues that the award of counsel fees was improper because it was contrary to "[t]he traditional American Rule ... that attorneys fees are not awardable to the winning party unless statutorily or contractually authorized." Similarly, Commerce argues that the award for lost profits due to DiMaria's loss of bonding capacity, lack of capital required to purchase materials, and damage to its corporate name, violated the rule of *Hadley v. Baxendale,* 9 *Ex.* 341, 145 *Eng. Rep.* 145 (1854) that damages for breach of a contract are limited to those losses which would have been reasonably foreseeable by the parties as a probable result of a breach.

However, under the *Perini* concurrence endorsed in *Tretina,* arbitrators have no obligation to follow the principles of law which would govern an action in a court of law. Instead, arbitrators may conclude that the only way to provide complete relief for a breach of contract—the only way to actually put the injured party in as good a position as it would have been in if the contract had not breached, see *Donovan v. Bachstadt,* 91 *N.J.* 434, 444, 453 *A.*2d 160 (1982)—is to award any counsel fees which had to be incurred to prove the breach as well as lost profits that were beyond the parties' contemplation at the time of execution of the contract. In fact, Chief Justice Wilentz' concurrence in *Perini* specifically criticized the plurality opinion's recourse to *Hadley v. Baxendale* in reviewing the arbitration award involved in that case. 129 *N.J.* at 547, 610 *A.*2d 364. The arbitrators also could have concluded that to prevent any further damage to DiMaria's business due to the lack of adequate operating capital, it would be "just and equitable" to encourage Commerce to pay the arbitration award promptly by requiring it to pay interest on the award at a rate in excess of the prevailing market rate. Therefore, even if we were to accept the underlying premise of Commerce's argument—that a

court could infer that an arbitration award was the product of fraud, corruption or similar wrongdoing based solely on its manifest excessiveness and unfairness—Commerce's presentation falls far short of what would be required to vacate an arbitration award under this theory.

## III

On its cross appeal, DiMaria argues that the trial courts in both actions erred in denying its counsel fee applications. In support of its applications, DiMaria relied upon the Frivolous Litigation Act, which provides in pertinent part that "[a] party who prevails in a civil action, . . . may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds . . . that a complaint, counter-claim, cross-claim or defense of the nonprevailing person was frivolous." *N.J.S.A.* 2A:15–59.1(a). A claim or defense may be found to be frivolous only if it was asserted "in bad faith, solely for the purpose of harassment, delay or malicious injury" or if, the losing party knew or should have known that the action was "without any reasonable basis in law or equity" and "could not be supported by a good faith argument for an extension, modification or reversal of existing law." *N.J.S.A.* 2A:15–59.1(b)(1),(2). Our Supreme Court has concluded that the Legislature intended the term "frivolous" to be "given a restrictive interpretation." *McKeown–Brand v. Trump Castle Hotel & Casino*, 132 *N.J.* 546, 561, 626 *A.*2d 425 (1993).

We are satisfied that neither of Commerce's actions was frivolous within the intent of *N.J.S.A.* 2A:15–59.1. Although we have concluded that the question whether DiMaria complied with the procedural preconditions of arbitration was within the arbitrator's authority to decide, there is case law in New Jersey supporting the contrary view. *See, e.g., Moreira Constr. Co. v. Township of Wayne, supra*, 98 *N.J.Super.* 570, 238 *A.*2d 185; *Brick Township Mun. Utils. Auth. v. Diversified R.B. & T Constr. Co., supra*, 171 *N.J.Super.* 397, 409 *A.*2d 806. Moreover, the more recent decisions of this court, which hold that arbitrators rather than a court

should decide whether a party has made a timely demand for arbitration, do not contain extensive discussion, *see, e.g., Enertron Indus., Inc. v. Mack, supra,* 242 *N.J.Super.* 83, 576 *A.*2d 28; *D'Arrigo v. New Jersey State Bd. of Mediation, supra,* 228 *N.J.Super.* 189, 549 *A.*2d 451; *Mahony–Troast Constr. Co. v. Supermarkets Gen. Corp., supra,* 189 *N.J.Super.* 325, 460 *A.*2d 149, and there is no decision of the Supreme Court of New Jersey which addresses the point. Therefore, there was no definitive statement of law contrary to the position Commerce advanced in its action to enjoin the arbitration proceedings.

Although we are satisfied for the reasons set forth in section II of this opinion that the position Commerce advanced in its action to vacate the arbitration award was clearly contrary to existing law, an action may be found to be frivolous under *N.J.S.A.* 2A:15–59.1 only if the losing party not only "knew or should have known" that the action was "without any reasonable basis in law or equity," but also that it "could not be supported by a good faith argument for an extension, modification or reversal of existing law." Even though *Tretina* sets forth a highly restrictive standard for judicial review of arbitration awards, the *Tretina* standard was only endorsed by four justices, two of whom (Chief Justice Wilentz and Justice Clifford) are no longer members of the Court. Thus, this standard is not firmly settled law in New Jersey, and a party would have a reasonable basis for arguing that our courts should return to a less restrictive standard for review of arbitration awards.

Finally, we discern no basis in this record for concluding that either of Commerce's actions was brought "in bad faith, solely for the purpose of harassment, delay or malicious injury." *N.J.S.A.* 2A:15–59.1(b)(1). Therefore, the trial courts in both actions correctly concluded that DiMaria was not entitled to counsel fees under the Frivolous Litigation Act.

Accordingly, the judgments in both actions are affirmed in all respects.