933 A.2d 988

ROCK WORK, INC., PLAINTIFF, v. PULASKI CONSTRUCTION CO., INC., DEFENDANT/THIRD–PARTY PLAINTIFF–RESPON-DENT–CROSS–APPELLANT, v. THE NORWOOD COMPANY, THIRD–PARTY DEFENDANT–APPELLANT–CROSS–RESPON-DENT, AND ST. PAUL FIRE AND MARINE INSURANCE COM-PANY, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued October 2, 2007—Decided October 25, 2007.

 

Before Judges COBURN, GRALL and CHAMBERS.

*Stanley B. Edelstein* (*Jacoby Donnor, P.C.*) of the Pennsylvania bar, admitted pro hac vice, argued the cause for appellant (*Stevens and Lee*, and *Mr. Edelstein*, attorneys; *Suzanne M. McSorley*, on the brief).

*Joseph J. Hocking* argued the cause for respondent (*Hedinger and Lawless*, attorneys; *Robert Hedinger* and *Mr. Hocking*, on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

When numerous controversies arose among companies involved in a commercial construction project, plaintiff Rock Work, Inc., filed suit in the Law Division against defendant Pulaski Construction Co., Inc. ("Pulaski"), which, in turn, impleaded defendant The Norwood Company ("Norwood"). By consent order, the judge stayed plaintiff's action while three arbitrators appointed by the American Arbitration Association ("AAA") resolved the Pulaski/Norwood dispute. After numerous hearings, which were not transcribed, the arbitrators made an award to Pulaski of $738,211.90, which included an award of "$148,004.00 as reimbursement for legal fees, expert fees and costs." In addition, the arbitrators determined that the "administrative fees of the [AAA] totaling $19,750.00 and the compensation and expenses of the neutrals totaling $79,554.68 shall be borne as follows: 35% by Claimant and 65% Norwood."

Pulaski asked the judge to confirm the award and grant additional attorney's fees for the post-arbitration, confirmation proceedings. Norwood asked the judge to vacate the award, arguing that the arbitrators (1) exceeded their jurisdiction when they directed Norwood to pay a portion of the attorney's fees incurred by Pulaski; and (2) substantially prejudiced Norwood's case by two procedural rulings. The Law Division judge confirmed the award, but refused Pulaski's request for additional attorney's fees. Norwood appealed and Pulaski cross-appealed. We affirm the judgment.

## I

Norwood, as contractor, and Pulaski, as subcontractor, entered into a written agreement for the work in question on October 25, 2000. The agreement described Norwood as a New Jersey corporation but stated its address as West Chester, Pennsylvania, and indicated that Pulaski was located in Mercerville, New Jersey. The construction project was in Princeton, New Jersey, and the agreement's choice-of-law provision stated, in pertinent part, that it "shall be governed by the laws of State in which the Work is located . . . ."

The agreement's arbitration provision read, in pertinent part, as follows:

> 24. *CLAIMS AND DISPUTE RESOLUTION* All claims, disputes and other matters in question arising out of or relating to this SUBCONTRACT, or the breach thereof, may, at the sole election of CONTRACTOR, be decided by arbitration. ⁖ ⁑ ⁑ The foregoing agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. Unless CONTRACTOR elects otherwise, any arbitration proceedings hereunder shall be held in Philadelphia, Pennsylvania. The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law in any Court having jurisdiction thereof.

The agreement's only specific reference to attorney's fees appeared in another section, which read as follows:

> 15. *BACKCHARGES* In the event that it becomes necessary for CONTRACTOR to (1) supply labor, materials or equipment either by request of SUBCONTRACTOR or due to SUBCONTRACTOR'S nonperformance, (2) make payments to Subsubcontractors, suppliers or others on behalf of SUBCONTRACTOR for this SUBCONTRACT, or (3) engage counsel in any matter which involves SUBCONTRACTOR'S nonpayments or nonperformance, all such items will be backcharged to SUBCONTRACTOR on the basis of actual costs and expenses incurred by CONTRACTOR plus 20%.

In February 2003, Pulaski submitted a demand for arbitration against Norwood with the AAA. Although the parties' arbitration agreement empowered Norwood to insist on litigation in the courts, or arbitration in Pennsylvania, Norwood chose to defend and offer its counterclaims in the AAA arbitration requested by Pulaski. The arbitration hearings, which the parties chose not to record, began in April 2005, apparently in New Jersey, and

concluded in October 2005. At that time, the AAA's Construction Industry Arbitration Rules ("CIAR") stated in section 46(d) that an arbitration award may include

> an award of attorneys' fees if all parties have requested such an award or it is authorized by law or by their arbitration agreement.

During the arbitration, both parties asked for attorney's fees.

According to Norwood's certification to the trial judge, near the end of the arbitration, Pulaski's counsel asked the arbitrators to direct Norwood to speak first during closing argument. Norwood objected. After a caucus, the arbitrators ruled that Pulaski should close first, followed by Norwood, followed by a rebuttal from Pulaski. Norwood further certified that Pulaski's attorney summed up for about two-and-one-half hours; that Norwood's attorney then summed up over two days for a total of about three hours, and that Pulaski's attorney gave his rebuttal for over five hours.

Norwood claims the arbitrators improperly overruled its objection that the rebuttal argument exceeded the appropriate parameters for rebuttal and failed to give it a fair opportunity to respond to the rebuttal.

The arbitrators declared that November 4, 2005, would be the final date for submissions by the parties of their proposed awards. According to Norwood, a letter sent by Pulaski to the arbitrators on November 4 inappropriately included in its submission some legal arguments in addition to its proposed award. Norwood submitted letters after November 4 rebutting those arguments. The arbitrators ruled that they would not consider anything submitted after November 4. Norwood claims it was prejudiced by that decision.

## II

We consider first Norwood's challenge to the award of attorney's fees. Norwood argues that the arbitrators erred by failing to apply the "American Rule." Under that rule, which is the law of this State, a prevailing party may not be granted attorney's

fees unless authorized by the parties' contract, court rule, or statute. *In re Estate of Vayda,* 184 *N.J.* 115, 120, 875 *A.*2d 925 (2005); *NJDPM v. New Jersey Dept. of Corr.,* 185 *N.J.* 137, 152, 883 *A.*2d 329 (2005); *Rendine v. Pantzer,* 141 *N.J.* 292, 322, 661 *A.*2d 1202 (1995). Norwood's challenge is based on the 2003 Arbitration Act, *N.J.S.A.* 2A:23B–1 to –32 ("New Jersey Uniform Arbitration Act of 2003" or "Arbitration Act"), and more specifically on section 21(b), which provides as follows:

An arbitrator may award reasonable attorneys' fees and other reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding.

Pulaski concedes that the award made in this case would have been unauthorized in a civil action, but offers the following arguments in support of the arbitrators' decision: (1) the statute is inapplicable; and (2) if applicable, it allows for an equitable award of attorney's fees because the parties agreed to submit their attorney's fees claims to the arbitrators. The second argument is not based on any express provision in the arbitration agreement since, as Pulaski admits, there is none. Rather, Pulaski argues that Norwood should be deemed to have so agreed either because attorney's fees were not excluded from the agreement's broad form description of the scope of arbitration, or because the parties submitted to AAA arbitration. In that regard, Pulaski relies on the above quoted AAA rule, CIAR 46(d), which says attorney's fees may be awarded, not only when authorized by law or by the arbitration agreement, but also "if all parties have requested such an award."

The first question to be resolved is which arbitration act applies to this case. In 2003, the Legislature repealed the former arbitration statute, *N.J.S.A.* 2A:24–1 to –11, and adopted the new arbitration act, which is generally modeled on the Uniform Arbitration Act of 2000 as proposed by the National Conference of Commissioners on Uniform State laws. *L.* 2003, *c.* 95, effective January 1, 2003, codified at *N.J.S.A.* 2A:23B–1 to –32. The new act contains two sections describing in detail the arbitrations to which it applies. *N.J.S.A.* 2A:23B–3 says this:

When act applies

a. This act governs all agreements to arbitrate made on or after January 1, 2003 with the exception of an arbitration between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement.

b. This act governs an agreement to arbitrate made before January 1, 2003 if all the parties to the agreement or to the arbitration proceeding so agree in a record with the exception of an arbitration between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement.

c. On or after January 1, 2005, this act governs an agreement to arbitrate whenever made with the exception of an arbitration between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement.

d. This act shall not apply to agreements to arbitrate made before July 4, 1923.

And *N.J.S.A.* 2A:23B–31 says this:

Actions or proceedings prior to effective date of act

This act does not affect an action or proceeding commenced or right accrued before this act takes effect. Subject to section 3 of this act, [*N.J.S.A.* 2A:23B–3] an arbitration agreement made before the effective date of this act is governed by *N.J.S.* 2A:24–1 et seq. and P.L. 1987, c. 54 (C.2A:23A–1 et seq).

█ This arbitration "commenced" in February 2003 when Pulaski submitted its request for arbitration to the AAA, which was after the Arbitration Act's effective date of January 1, 2003. Therefore, under the first sentence of section 31, application of the Arbitration Act is not excluded. However, under the second sentence of section 31, since the arbitration agreement was made before the Arbitration Act's effective date, the old act governs unless otherwise dictated by section 3. Reading subsection 3(c) literally, Norwood argues that it applies even though the arbitration commenced in 2003 because the arbitration hearings began after January 1, 2005. We reject Norwood's literal reading of that subsection for the following reasons.

█ When called on to interpret a statute, the " 'overriding goal has consistently been to determine the Legislature's intent.' " *Young v. Schering Corp.*, 141 *N.J.* 16, 25, 660 *A.*2d 1153 (1995). When the language is clear, we generally rely on its plain meaning. *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002). But if "literal application of the language used would lead to

results incompatible with the legislative design," we are obliged "to give effect to the obvious purpose of the Legislature...." *New Capitol Bar & Grill Corp. v. Div. of Employment Sec.*, 25 *N.J.* 155, 160, 135 *A.*2d 465 (1957). In that circumstance, " 'words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.' " *Ibid.* (citations omitted). There is one additional rule of statutory construction that is particularly relevant here since we are concerned with the extent to which this statute should be applied retroactively:

> A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied.
>
> [*Kopczynski v. County of Camden*, 2 *N.J.* 419, 424, 66 *A.*2d 882 (1949).]

Applying those principles, we are satisfied that the legislative intent in subsection 3(c), when considered in relation to section 31's reference to the commencement of proceedings as providing the critical timeframe, is that it applies the Arbitration Act under subsection 3(c) to arbitrations commenced after January 1, 2005. Since this arbitration commenced in 2003, and the parties did not otherwise agree on the record, the new Arbitration Act does not apply.

Under the former arbitration statute, which said nothing about attorney's fees, we held that an award of attorney's fees came within an arbitrator's inherent power under the parties' agreement to arbitrate. *Commerce Bank v. DiMaria Constr., Inc.*, 300 *N.J.Super.* 9, 19, 692 *A.*2d 54, *certif. denied*, 151 *N.J.* 73, 697 *A.*2d 546 (1997), *cert. denied*, 522 *U.S.* 1116, 118 *S.Ct.* 1053, 140 *L.Ed.*2d 116 (1998). The arbitration agreement in *Commerce Bank* is indistinguishable from the one used by the parties in this case; i.e., both agreements submitted all controversies arising from or related to the contract to arbitration. In sustaining the fee award, we relied on the restricted scope of judicial review established in *Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc.*, 135 *N.J.* 349, 640 *A.*2d 788 (1994), which states that "basical-

ly, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators." *Id.* at 358, 640 *A.*2d 788 (citation omitted). Moreover, we specifically rejected the argument that the fee award was contrary to the American Rule because under *Tretina*

> arbitrators have no obligation to follow principles of law which would govern an action in a court of law. Instead, arbitrators may conclude that the only way to provide complete relief for a breach of contract ... is to award counsel fees....
>
> [*Commerce Bank, supra,* 300 *N.J.Super.* at 19, 692 *A.*2d 54.]

Therefore, the fee award must be sustained.

Although it is not necessary to Pulaski's case, its position is obviously buttressed by CIAR 46(d). Under their agreement, Norwood could have insisted on litigating the dispute in court; or, having agreed to arbitrate, it could have insisted on a submission to some entity other than the AAA. Instead, it accepted Pulaski's choice, and with it the rules of the AAA. Therefore, we perceive no fair basis for saying that CIAR 46(d) should not have been applied by the arbitrators. Consequently, the judgment confirming the fee award is sustainable on this basis as well as under *Commerce Bank*.

## III

We next consider Norwood's claim that the arbitrators' procedural rulings noted above require vacation of the award. Norwood's argument in that regard is based solely on the Arbitration Act, which, as we have noted, is inapplicable to this case. However, on this point there is no substantial difference between the two arbitration acts. Under the former act, an award may be vacated "[w]here the arbitrators were guilty of misconduct in refusing ... to hear evidence, pertinent and material to the controversy, or any other misbehaviors prejudicial to the rights of any party." *N.J.S.A.* 2A:24–8(c).

Relying on *Manchester Township Board of Education v. Thomas P. Carney, Inc.,* 199 *N.J.Super.* 266, 489 *A.*2d 682 (App.Div. 1985), which vacated an arbitration award because of the refusal of

the arbitrators to hear critical evidence, Norwood argues that the arbitrators' rulings on the procedure for closing arguments and receipt of final submissions should be deemed to be a failure to hear evidence. That claim is made without supporting authority, and its acceptance would be entirely inconsistent with the *Tretina* standard of review.

## IV

Last, we consider Pulaski's argument that it was entitled to an award of fees incurred in obtaining confirmation of the arbitration award. The only authority cited for that proposition is the Arbitration Act, and in particular *N.J.S.A.* 2A:23B–25(c), which provides as follows:

> On application of a prevailing party to a contested judicial proceeding pursuant to section 22, 23, or 24 of this act, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, or substantially modifying or correcting an award.

We assume that the argument for fees was based on the possibility that we might have decided that the Arbitration Act applied to this case. Since we have accepted Pulaski's contrary contention, there is no basis for awarding fees. And we note that Pulaski has not argued that it was entitled to fees under the Frivolous Litigation Act, *N.J.S.A.* 2A:15–59.1. *See Commerce Bank, supra,* 300 *N.J.Super.* at 20–21, 692 *A.*2d 54, for an application of that statute in an arbitration case.

Were we to assume that the Arbitration Act provisions on attorney's fees applied here, we would still not grant the relief requested by Pulaski because there was a substantial question about whether the act applied and because we are satisfied for the following reasons that under the act Pulaski was not entitled to receive an attorney's fee award from the arbitrators.

The Arbitration Act adopts the American Rule except when fee-shifting occurs "by the agreement of the parties to the arbitration proceeding." *N.J.S.A.* 2A:23B–21(b). The question, as we perceive it, is whether an express agreement is required or whether

an implied agreement will do. In this case, Pulaski concedes that there was no express agreement for fee-shifting but argues that an agreement may be implied because the arbitration agreement called for "all claims, disputes and other matters in question arising out of or relating to" the contract to be resolved in the arbitration, Norwood submitted to AAA arbitration, and the applicable AAA rule, CIAR 46(d), stated that fees may be awarded if both sides ask for them.

Of course, "[i]mplied contract terms generally are considered as binding as express contract terms." *Troy v. Rutgers*, 168 *N.J.* 354, 365, 774 *A.*2d 476 (2001). However, "[t]he recognition of implied-in-fact contract provisions is contrary to "the common law presumption that the parties' writing and the official law of contract are the definitive elements of the agreement." *Ibid.* (citations and internal quotes omitted). Although the courts give effect to implied contracts, it does not follow that the Legislature so intended when it adopted *N.J.S.A.* 2A:23B–21(b).

When attempting to discern legislative intent, "we consider not only the particular statute in question, but also the entire legislative scheme of which it is a part." *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987). Thus, "[s]tatutes *in pari materia* are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent." *State v. Green*, 62 *N.J.* 547, 554–55, 303 *A.*2d 312 (1973).

The overall legislative scheme for resolution of disputes by arbitration is set forth in a number of enactments, some of which are noted in *N.J.S.A.* 2A:23B–32. One of those enactments is The New Jersey Alternative Procedure for Dispute Resolution Act, *L.* 1987, *c.* 54, *N.J.S.A.* 2A:23A–1 to –19 (the "APDRA"). This legislation was adopted to give parties rights not then available under the former arbitration act. *Mt. Hope Dev. Assoc. v. Mt. Hope Waterpower*, 154 *N.J.* 141, 145, 712 *A.*2d 180 (1998). The APDRA addresses fee-shifting in the following manner:

"When the agreement for alternative resolution *expressly* provides, the umpire may provide for payment of attorney's fees." *N.J.S.A.* 2A:23A–17 (emphasis added).

 Although the Arbitration Act does not use the term "expressly," from which one might infer that it contemplates implied contracts as well as express contracts for fee-shifting, we see no reason for inferring that the Legislature intended implied contracts to be sufficient in one setting and not in the other. Thus, construing these statutes *in para materia*, it would appear that the Arbitration Act requires an express contract. Moreover, a plain-meaning reading of the Arbitration Act provision on fee-shifting requires an agreement of the parties on *that* subject, not merely submission of a dispute to an arbitration association that has a more liberal view on fee-shifting, as is the case here. Given the fact that most arbitration agreements are of the broad-form type involved here and many arbitrations are conducted by the AAA, adoption of Pulaski's position would mean that attorney's fees could be granted by arbitrators under the Arbitration Act unless the parties affirmatively agreed that there would be no fee-shifting. But, the statute calls for the opposite result; namely, that the American Rule will prevail in arbitration unless the parties otherwise agree. Since there was no express agreement here, Pulaski was not entitled to attorney's fees at either stage of the proceedings.

Affirmed.