**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0777-18T2

RALPH MITSCHELE, JR., and
NORMAN MITSCHELE, JR.,

     Plaintiffs-Respondents,

v.

WILF/MITSCHELE JOINT
VENTURE, and WILF LAW FIRM,
LLP,

     Defendants,

and

NORTHFIELD-LIVINGSTON
DEVELOPERS, LLC, HILLSIDE
HEIGHTS, LLC, W&M JOINT
VENTURE LLC, ZYGMUNT WILF,
LEONARD WILF, MARK WILF, and ELI
PECHTHOLD,

     Defendants-Appellants.

_____

MARK WILF, ZYGMUNT WILF,
LEONARD WILF, and ELI PECHTHOLD
individually and derivatively on behalf of
W&M JOINT VENTURE, LLC,

HILLSIDE HEIGHTS, LLC, EDGEMERE ESTATES, INC. and NORTHFIELD-LIVINGSTON DEVELOPERS, LLC, directly and derivatively on behalf of W&M JOINT VENTURE, LLC,

     Plaintiffs-Appellants,

v.

RALPH MITSCHELE, JR., and NORMAN MITSCHELE, JR.,

     Defendants-Respondents,

and

DEERCO, INC., and EXEX, INC.,

     Defendants.

_____

Argued February 5, 2020 – Decided May 5, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket Nos. C-000212-14 and C-000217-14.

Sheppard A. Guryan argued the cause for appellants (Lasser Hochman, LLC, attorneys for appellants; John R. Wenzke and Sheppard A. Guryan, of counsel and on the briefs; Bruce H. Snyder, on the brief).

Alan M. Lebensfeld argued the cause for respondents (Lebensfeld Sharon & Schwartz PC, attorneys for

respondents; Alan M. Lebensfeld, of counsel and on the brief).

PER CURIAM

This appeal concerns the January 23, 2015 court confirmation of an arbitration that arose out of a dispute between the parties to a joint venture. On January 4, 2000, Northfield Livingston Developers, LLC, which was owned by Mark Wilf, Zygmunt Wilf, Leonard Wilf, and Eli Pechthold (the Wilfs), and Deerco, Inc. and ExEx, Inc., which were owned by Norman Mitschele, Jr. and Ralph Mitschele, Jr. (the Mitscheles), entered into a joint venture agreement (JVA) for the purpose of developing a forty-lot, single-family home subdivision in Livingston, referred to as the Hillside Heights project. To that end, the joint venture formed three entities, Hillside Heights, LLC, Edgemere Estates, Inc., and W&M Joint Venture, LLC, which were all owned fifty percent by the Wilfs, and fifty percent by the Mitscheles.

Numerous disputes between the Mitscheles and Wilfs arose regarding the management and operation of the joint venture, and in February 2011, the Mitscheles commenced an arbitration proceeding. After nine days of hearings, on August 25, 2014, the arbitrator entered a final award in favor of the Mitscheles, which included a $2 million liquidated damages award.

On September 7, 2018, after appeal to the Chancery Division, a final

judgment essentially affirmed the $2 million monetary award to the Mitscheles, and required the Wilfs to pay $123,350.33 in legal fees related to the confirmation of the arbitration award. The Wilfs, individually and derivatively on behalf of W&M Joint Venture, LLC, Hillside Heights, LLC, Edgemere Estates, Inc. and Northfield Livingston Developers, LLC (collectively, appellants), appeal various orders that modified and affirmed the final award in arbitration, as well as the award of legal fees. We affirm substantially for the cogent reasons expressed by Judge Thomas M. Moore.

I.

Deerco and ExEx owned the property upon which the Hillside Heights project was to be built. Pursuant to the JVA, Deerco and ExEx transferred their property to the joint venture, and the Mitscheles were credited with a $4 million capital contribution. The Wilfs were required to contribute $4 million as their capital contribution; $2 million was paid to Deerco and ExEx upon the transfer of the property to Edgemere and Hillside, and the additional $2 million was to be paid as needed for joint venture expenses.

Numerous disputes between the Mitscheles and Wilfs arose regarding the management and operation of the joint venture. Those disputes increased in 2010, and the Mitscheles called for the replacement of Neidich & Co.,

which had also served as the Wilfs' accountant, as the joint venture's accountant, and the escrowing of the joint venture's proceeds until their disputes could be addressed. In February 2011, the Wilfs unilaterally shut down the Hillside Heights project. That same month, the Mitscheles commenced an arbitration proceeding pursuant to the JVA.

In December 2011, the parties retained a retired federal judge to serve as arbitrator. The arbitrator's engagement letter provided:

> The proceeding shall be conducted as a self-administered arbitration but will be governed by the Commercial Arbitration Rules of the American Arbitration Association and by the terms of Article XV(c) of the parties' [JVA] dated January 4, 2000. . . . Any [a]ward shall be binding upon the parties; judgment may be entered upon said [a]ward in a court of competent jurisdiction; and such judgment may be enforced according to law.
>
> . . . .
>
> The [a]rbitrator's authority to conduct the arbitration proceeding shall be exclusive and complete. The [a]rbitrator shall have the power to grant such legal and equitable remedies on a provisional or final basis as a trial court of competent jurisdiction could grant in similar cases.

In their statement of claims, respondents alleged that "[t]he action involve[d] contractual, business tort and statutory claims arising from a real estate development joint venture," which appellants have "repudiated."

5

Alleged default events included:

- Causing payment of alleged "expenses" that are not legitimate joint venture expenses to affiliated persons and entities, notably Leonard Wilf and Concord Developers, another entity controlled by Wilf;

- Improperly stating joint venture expenses and thereby unjustly enriching themselves or affiliated persons or entities;

- Making unauthorized payments from joint venture funds;

- Upon information and belief, commingling joint venture assets with assets of other entities or persons;

- Unreasonably withholding or improperly stating distributions owed to the joint venture partner, Mitschele;

- Causing joint venture tax returns to be filed without notice to or timely review by Mitschele, with personal liability borne by Ralph and Norman Mitschele;

- Refusing to disclose financial records and supporting documents and to make reasonable responses to requests for financial records;

- Failing to maintain accurate financial records;

- Refusing Mitschele's right to participate equally in the operation and management of the joint venture;

A-0777-18T2

- Refusing to continue with reasonable efforts to develop the remaining lots; and

- Refusing to remove Neidich & Company (the accountants for other Wilf entities and the Wilfs, personally) as the accountants for the joint venture, despite written notice by the Mitscheles of Neidich's conflict of interest and demand for the appointment of a neutral accounting firm.

Appellants do not dispute respondents sought more than $2 million, requesting the following relief:

- An accounting of all revenues, expenses, disbursements and profits of the joint venture;

- Distribution of sums owned to Mitschele after an accounting, disgorgement and reimbursement of all monies improperly paid or applied;

- An award of compensatory, consequential, punitive and treble damages, as applicable;

- Just and equitable apportionment of all remaining joint venture assets, to include adjustment of the parties' respective capital accounts when and if necessary;

- An award of pre-judgement and post-judgment interest;

- An award of attorneys' fees as allowed by contract or by statute, and as otherwise allowed in arbitration;

7

- An award of costs, to include the arbitrator's fees and fees incurred for accounting professionals;

- A final determination of all other remaining rights of the parties to the joint venture;

- Dissolution of the joint venture; and

- Such other and further relief as the arbitrator deems just.

In their response to the statement of claims and counterclaim, appellants alleged that the action involved "contractual and common-law claims arising from a real estate development joint venture," and by way of counterclaim asserted various breaches by respondents and sought an award in their favor.

## II.

After a nine-day testimonial arbitration, on August 25, 2014, the arbitrator entered a final award, determining that the Wilfs had materially breached the JVA and, pursuant to the election of remedies provision set forth in that agreement, the Mitscheles were entitled to termination of the joint venture and recovery of "its prior contributions to the [j]oint [v]enture," in the amount of $2 million. The arbitrator explained:

> Th[e] disputes [between the Wilfs and Mitscheles] multiplied in 2010, and the Mitscheles reasonably called for the replacement of Neidich & Co. as the [j]oint [v]enture's accountants and the

A-0777-18T2

escrowing of proceeds from the sale of [one of the lots] (consistent with prior practice throughout the years) until present disputes regarding such things as proper charges to the funds of the [j]oint [v]enture could once again be addressed. If for no other reason, the Mitscheles were justified in criticizing the decision of Neidich & Co. to book the reversal of Hillside Heights expenses (with resulting substantial additional phantom income which imposed heightened tax liability upon the Mitscheles) for the calendar year 2009. . . . No satisfactory explanation for the backdating of these reversals to the year 2009 was presented on the record of this arbitration. Whether out of anger, a calculated desire to generate leverage or otherwise, the Wilfs then unilaterally shut down the project, a breach of their primary obligation to co-manage the [j]oint [v]enture in its basic, underlying business: the sale of lots and construction of homes. . . .

  . . . .

Unlike the [Wilfs], the [Mitscheles] committed no breaches or acts of default under the JVA.

 This [a]rbitrator finds and determines that the Wilfs' refusal to continue or resume the Hillside Heights development, thereby bringing the work of the [j]oint [v]enture to a standstill and completely frustrating its business purpose was a <u>material</u> breach of the JVA and was an uncured "default under the [JVA]" . . . which throws this matter clearly into the provisions of Article XV(b) . . . . That default permits the [Mitscheles] . . . to pursue such remedies as are available to them under that Article.

As to the remedies available to the Mitscheles under Article XV(b), the

arbitrator stated:

> [O]ption (i) under Article XV(b) is neither applicable to the present controversy nor sought by the Mitscheles herein.
>
> Option (ii), however, which permits a party "to terminate this [a]greement and recover its prior contributions to the [j]oint [v]enture" is applicable and available to the Mitscheles . . . . Pursuant to Article XI of the [JVA] which is specifically directed to [t]ermination, "the [j]oint [v]enture shall be dissolved and wound up in accordance with . . . those provisions of New Jersey Statutes that speak to such issues, except insofar as such provisions may be at variance with the terms of this [a]greement." The "prior contributions to the [j]oint [v]enture" made by the Mitscheles are a net of $2,000,000, the return of which will be discussed hereafter.[4] Thus, the Mitscheles have established entitlement to that sum. Any argument that some or all of the $2,000,000 balance in their capital contribution has been satisfied by distribution of proceeds of sale from the developed lots is unpersuasive. No matter how those payments might have been carried on the books and records, these were distributions of profits on the sales of houses, not returns of "prior contributions" of capital.
>
> As noted in the quotation above, immediately after the expression of the optional remedies available to a non-defaulting party, the following language appears:
>
> > The return of such contributions shall constitute and be liquidated and agreed damages and upon payment thereof, the parties thereto shall be relieved of any further liability to each other, it being

10

expressly understood that such remedy, if elected, shall then be the sole and exclusive right and remedy of the non-defaulting party, and constitutes a fair and reasonable remedy for the damage sustained as a result of the breach. Under no circumstances shall either [j]oint [v]enturer be liable to the other for any damages other than specified above whether such damages are direct or consequential.

That limitation of remedies is as comprehensive, complete and unambiguous as it could possibly be. Any deviation or qualification placed upon those terms would violate both the parol evidence rule and the clauses governing integration and modification in the [JVA]. . . .

. . . .

Due to the limitation of damages clause, including a specific provision that "the parties thereto shall be relieved of any further liability to each other," [the Mitscheles'] recovery in this matter is strictly limited to the $2,000,000 discussed above, and no sums are recoverable by [the Wilfs].

_____

[4] At the outset of the [j]oint [v]enture the Mitscheles contributed [forty] lots valued at a total of $4,000,000 and, within a matter of months thereafter received $2,000,000 in partial redemption of that capital contribution.

As to the termination, dissolution, and winding up of the joint venture, the arbitrator explained:

11

Pursuant to the powers conferred upon this [a]rbitrator in the retention letter previously described herein, and upon the joint application of the [p]arties, the undersigned will enter a declaratory judgment that the JVA is terminated and the [j]oint [v]enture is dissolved. . . .

However, the next step after the dissolution of a partnership (or a [j]oint [v]enture) is the winding up of its business. That undertaking, or legal proceeding if necessary, is not within the jurisdiction of this [a]rbitrator. . . .

. . . .

Furthermore, numerous items and issues will have to be addressed in the winding up of the business of this [j]oint [v]enture which are well outside the record generated in this arbitration. . . . Furthermore, this winding up will necessarily involve several persons and entities who are not parties either to the JVA or this arbitration. Those parties include Hillside Heights, Edgemere, and each of the Wilfs individually, as well as any third-party debtors or creditors of the [j]oint [v]enture, the Township of Livingston,[] and any potential purchasers of the remaining lots. In addition, as part of the winding up process, the [j]oint [v]enture will have to file necessary federal and state tax returns and discharge any liabilities which it may have to any taxing authority.

. . . .

Accordingly, this [a]rbitrator will include in this [f]inal [a]ward a directive that the parties proceed forthwith with the winding up of the business of the [j]oint [v]enture. However, that undertaking must

12

take place outside the confines of this arbitration.

The final arbitration award provided:

> 1. Ralph Mitschele, Jr. and Norman Mitschele, Jr. are hereby [a]warded jointly, the sum of $2,000,000 against the [r]espondent W&M Joint Venture, LLC.
>
> 2. The nominal [r]espondents Edgemere Estates, Inc. and Hillside Heights, LLC are dismissed from this arbitration.
>
> 3. The parties to this arbitration are hereby awarded a declaratory judgment that the [JVA] is hereby terminated and W&M Joint Venture, LLC (the [j]oint [v]enture entity) is hereby dissolved.
>
> 4. The parties are directed to proceed with the winding up of the business of the [j]oint [v]enture and W&M Joint Venture, LLC either through agreement or, if necessary, by seeking the aid and supervision of a court of competent jurisdiction, acting pursuant to applicable provisions of the [JVA] and the laws of the State of New Jersey.
>
> 5. All other claims asserted by any party herein, including claims for awards of costs and/or attorneys' fees are denied and dismissed. [The Mitscheles] and [the Wilfs] will each bear their own costs and attorneys' fees as incurred.
>
> 6. The fees and expenses payable to this [a]rbitrator . . . will be billed and then satisfied from the [p]arties' deposits . . . . Throughout this matter, each side has been responsible for [fifty percent] of the [a]rbitrator's fees and that will remain the case. No portion of this obligation will be shifted from one party to another. These fees will remain as incurred.

13

The Mitscheles asked the court, pursuant to N.J.S.A. 2A:23B-23(a), to modify the final arbitration award based "upon the ground that the [a]rbitrator refused to consider evidence which would have been material to the controversy," that Hillside and Edgemere were joint venture entities and "proper and necessary parties to the [a]rbitration" over whom the arbitrator had jurisdiction, and that the remaining lots held by Hillside and Edgemere "would be subject to satisfaction of the [a]rbitrator's [f]inal [a]ward." Alternatively, the Mitscheles sought confirmation pursuant to N.J.S.A. 2A:23B-24(b) and N.J.S.A. 2A:23B-2.

Pursuant to N.J.S.A. 2A:23B-24(a), the Wilfs sought to summarily modify and then confirm the modified award based upon the ground that "the arbitrator made an award on a claim not submitted to the arbitrator." Alternatively, the Wilfs sought to vacate the final arbitration award on the grounds that it was "procured by undue means," its issuance "constituted [a]rbitrator misconduct," and the arbitrator exceeded his authority.

On January 23, 2015, Judge Moore granted the Mitscheles' motion pursuant to N.J.S.A. 2A:23B-24(a)(3), modifying the final arbitration award and determining that it was enforceable against all three joint venture entities.

Judge Moore also confirmed the modified award.  In doing so, he stated:

> The evidence . . . unequivocally shows that the parties intended the joint venture entities to be a part of the arbitration and in fact seems to indicate that it was so obvious to the parties that Edgemere, Hillside, and W & M all constituted the embodiment of the joint venture that the parties did not even feel it necessary to have to explain that to the arbitrator.
>
> As such, I do find on this record that the parties did intend Edgemere and Hillside, as well as W & M, to be part of the arbitration.

The judge modified the form of the award "to include Edgemere and Hillside as part of the arbitration and allow recovery against the three joint venture entities:  Edgemere, Hillside, and W & M."

In rejecting the Wilfs' arguments, he explained:

> I think [Block v. Plosia, 390 N.J. Super. 543 (App. Div. 2007) is] distinguishable from what we have here, very distinguishable.  In Block, the arbitrator was governed by the arbitration agreement which specifically limited the scope of the arbitration as follows: [t]he parties do agree to submit all matters in difference before them to the award and final determination of an arbitrator selected by them.
>
> In this matter, [the arbitrator's] jurisdiction was governed by his retention letter to the parties and the [JVA].  No such provision agreeing to limit the matters exist in either of those governing documents.
>
> . . . .

> And, in this matter, we have the following: [t]here is a limitation, [the JVA] . . . limit[s] its remedy to either a specific performance or return of capital contribution . . . .
>
> . . . [I]n finding the Wilfs to be the breaching party, finding the Mitscheles to be entitled to a remedy, [the arbitrator] meticulously framed his award to fit within parameters provided by the parties and the governing instrument.

Judge Moore also appointed a receiver for all three entities, "to liquidate the corporation or the partnership assets, to satisfy the responsibilities, and distribute whatever is left."

Appellants' counsel argued, in a dispute over the form of the order, that the receiver should be required to perform an accounting of the joint venture as part of the winding up, which the judge denied, viewing it as a collateral attack on the damages awarded by the arbitrator.

Judge Moore denied the Wilfs' motion for reconsideration, explaining:

> Put simply, the Wilfs assert that because there was not an affirmative claim for capital contributions put forth by the Mitscheles, the arbitrator did not have the authority to award capital contributions. The Wilfs assert this argument is supported by the holding of Block.
>
> . . . Unlike Block, the parties here sought, among other relief, an accounting, damages and remedies in accordance with the [JVA]. Moreover, pursuant to the retention letter, both parties agreed

16

that the arbitrator's authority to conduct the arbitration proceeding shall be exclusive and complete. The arbitrator shall have the power to grant such legal and equitable remedies on a provisional or final basis as a trial court of competent jurisdiction could grant in similar cases.

. . . .

. . . [T]he [c]ourt finds and reaffirms that there is no question that the arbitrator had the jurisdiction under the relief requested to award the damages as outlined above to the Mitscheles. But really, in my view, the focus of the Wilfs' argument is not whether the parties left the door open for a return of capital contributions as relief, instead they argue that the Mitscheles had not put in the return of capital contribution into the issue in their asserted claims. [The Wilfs' counsel] referred to that as no opportunity to be heard, lack of due process.

I don't buy that at all. I don't find that to be accurate and even a cursory reading of the Mitschele statement of claims shows as much. Multiple claims allege misuse of joint venture funds and assets which would necessarily incorporate capital contributions as part of the joint venture's funds and assets. Moreover, the claims include failure to maintain accurate financial records, which would implicitly and necessarily include records for the use and return of capital contributions. . . .

Thus, the [c]ourt finds that not only were there capital contributions at issue before the arbitrator as a necessary component of the claims put forth by the Mitscheles, but, again, that [the arbitrator] had the authority to award those damages and capital contributions under the retention agreement, the

17

[JVA], and the statement of claims provided by the parties. Those are really the three documents that I'm considering: retention agreement, [JVA], and statement of claims.

Moreover, the [c]ourt finds it unpersuasive that as only specific performance and capital contributions can be awarded under the [JVA] that the Wilfs had no notice of the possibility of an award as given by [the arbitrator]. . . .

Regarding the Wilfs' argument that they were entitled to an order directing the receiver to conduct a post-award accounting, the judge stated:

We're not going to order the receiver to conduct an accounting of each party's interest from the beginning of the [JVA].

. . . [I]t's the opinion of the [c]ourt that the issues related to the parties' conduct with each other and the joint venture should have been and in fact was, part of the arbitration. The outcome of that arbitration has been confirmed by this [c]ourt, . . . to go back now and order that an accounting be made from inception would to a significant extent undo the outcome of that arbitration. It's neither sensible nor appropriate. The receiver . . . has accounted for any funds he received or expended in undertaking his duties. But that is the extent of any further accounting which should occur.

. . . .

The Wilfs' position is inconsistent with the purpose and terms of the [JVA], specifically [XV(b)] as well as commonsense. . . .

. . . [I]t seems highly unlikely that the arbitrator

18

could have intended to completely undermin[e] his final award by so rigidly requiring the application of [N.J.S.A.] 42:1A-41 and 45 that it would undo his decision. Further, article 11 of the [JVA] entitled termination provides that where the joint venture is terminated pursuant to the terms of the agreement, it "shall be dissolved and wound up in accordance with those provisions of the New Jersey statutes that speak to such issues except in so far as such provisions may be at variance with the terms of this agreement."

This provision makes clear to me that the [JVA] was designed to avoid the type of logically inconsistent results suggested here. Applying [N.J.S.A.] 42:1A-41 in the manner presented by the Wilfs would . . . effectively render futile the remedy provision [XV(b)], upon which the arbitrator's final award was grounded and would transform these proceedings into an empty, very lengthy and expensive exercise.

In April 2016, the court issued an order denying the Wilfs' application.

The Wilfs then moved for a redetermination of the disposition of funds held in escrow by the receiver based upon the filing of the joint venturers' 2010-2015 tax returns and Section 704 of the Internal Revenue Code.

In March 2017, Judge Moore denied the Wilfs' motion, explaining:

[The first issue] before the [c]ourt is a narrow one, whether the so-called accounting performed by [the receiver]'s accountant for the JVA wind up in preparation of the filing of those tax returns changes the analysis under the JVA or the New Jersey Statute. I don't think it does.

19

. . . .

I'm just not persuaded that this particular activity which triggered this new motion gives the [c]ourt reason to reconsider its previous determination. There's no indication that the arbitrator's final award was premised on the notion that at the end of the wind up of the joint venture, each party would still zero out. . . .

. . . A capital account analysis prepared for five years of tax return[s] showing that the capital accounts do not equal zero is simply not enough for the [c]ourt, particularly in light of the explanations that the Mitscheles give for that as to how it's treated. It's simply not enough for the [c]ourt to reopen its analysis of the arbitrator's decision, especially when the arbitrator found fault on the . . . party alleging it's owed money. It would turn the whole situation on its head.

. . . .

. . . The tax code, in my view, provides no basis for the [c]ourt to reconsider its previous findings or to disturb the distribution of money as envisioned by [the arbitrator] in the arbitration award. That's really central to this and the other . . . findings. To do anything else . . . would render it meaningless, which I don't think [the arbitrator] intended.

. . . [T]he potential tax consequences that will follow the distribution of the money held by the receiver is no reason to disturb the findings of the arbitrator or the previous rulings of the [c]ourt, rather the taxes paid will have to be adjusted to accurately reflect gains and losses . . . . To vacate a previous decision based on tax consequences of carrying it out

20

would be backwards and just not appropriate.

In September 2018, the court entered a final order and judgment awarding the Mitscheles the net sum of $1 million and required that such funds remain in escrow with the receiver, pending determination of this appeal.  On October 17, 2018, an amended final order and judgment was entered to fix the amount of the Wilfs' supersedeas bond.

## IV.

After de novo review, Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019), we affirm Judge Moore's decisions substantially for the thoughtful and thorough reasons he placed on the record.  We add the following discussion.

While the arbitrator may have accorded relief not specifically sought by either party, it was well within his discretion and the provisions of both the arbitration agreement and JVA to do so.  Because the return of prior capital contribution was agreed-upon liquidated damages, set forth in Article XV of the JVA, the arbitrator was authorized to award respondents $2 million in liquidated damages, an amount equal to their prior capital contribution.  A "liquidated damages provision[] in a commercial contract between sophisticated parties [is] presumptively reasonable [and enforceable] and the party challenging the clause bears the burden of proving its unreasonableness."

Metlife Capital Fin. Corp. v. Wash. Ave. Assocs. LP, 159 N.J. 484, 496 (1999).

Arbitration is "a favored means of dispute resolution." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). "The object of arbitration is the final disposition, in a speedy, inexpensive, expeditious, and perhaps less formal manner, of the controversial differences between the parties." Id. at 343 (quoting Carpenter v. Bloomer, 54 N.J. Super. 157, 162 (App. Div. 1959)).

"[T]he scope of review of an arbitration award is narrow. Otherwise, the purpose of the arbitration contract, which is to provide an effective, expedient, and fair resolution of disputes, would be severely undermined." Fawzy v. Fawzy, 199 N.J. 456, 470 (2009). Thus, "courts grant arbitration awards considerable deference." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013).

"[W]hen binding arbitration is contracted for by litigants, the judiciary's role to determine the substantive matters subject to arbitration ends." Minkowitz v. Israeli, 433 N.J. Super. 111, 134 (App. Div. 2013). The party seeking to vacate the award bears the burden of establishing a basis to vacate. Id. at 136. We review the trial court's decision to vacate or enforce an arbitration award de novo. Manger v. Manger, 417 N.J. Super. 370, 376 (App.

22

Div. 2010).

Block does not add support to appellants' argument. There, the question

presented was:

> whether an arbitrator retained pursuant to the parties' written agreement to "submit all matters in difference between them" to arbitration had the authority under the Arbitration Act to award statutory treble damages and counsel fees, in circumstances in which the advance statement of issues submitted by the parties to the arbitrator made no reference to statutory claims nor contained any demands for treble damages or statutory fees.
>
> [Block, 390 N.J. Super. at 545.]

We held that "in the absence of indicia that all parties to the arbitration have

reasonable advance notice that the scope of the arbitration includes potential

liability for treble damages and counsel fees, an arbitrator may not impose

such extraordinary relief in the award." Ibid.

Here, unlike in Block, all the parties had advance notice that the scope of

the arbitration included the potential liability for the return of the prior capital

contributions to the non-defaulting party because such a remedy was agreed to

by the parties and stated in the JVA.

## V.

Appellants contend that the trial court erred in granting the Mitscheles

legal fees pursuant to N.J.S.A. 2A:23B-25(c). They argue that "[t]he statute only permits such an award if the underlying arbitration award found entitlement to such fees," and since the arbitrator "already ruled that the Mitscheles were not entitled to legal fees for the remedies they pursued under the JVA," the Mitscheles were not entitled to an award of legal fees.

In denying the Mitscheles' request for pre-award legal fees and arbitration fees, the arbitrator explained:

> Although the [Mitscheles] did succeed in securing the return of the balance of their capital contributions to the [j]oint [v]enture, they were unsuccessful in pursuing their several claims for damages. All claims of the [Wilfs] were also denied. Under these circumstances, it cannot be said that there was truly a prevailing party in this matter. Accordingly, although this [a]rbitrator has the discretion to do so (see AAA Rule 47(d)(ii)),[1] there is no basis for a recovery by any party against another of all or part of its attorneys' fees. Furthermore, in contrast to the remedy of specific performance set forth in Article XV(b)(i) of the JVA, the recovery of capital contributions under subsection (ii) does not require an award of attorneys' fees. Each side in this matter is required to bear the fees of its own counsel, and they will remain as incurred.

---

1  American Arbitration Association (AAA), Commercial Arbitration & Mediation Procedures, Rule 47(d)(ii) (2013) states: "The award of the arbitrator(s) may include: . . . an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."

A-0777-18T2

The court awarded respondents $123,350.33 in legal fees and costs pursuant to N.J.S.A. 2A:23B-25(c) (emphasis added) (footnote omitted), which provides:

> On application of a prevailing party to a contested judicial proceeding pursuant to section 22, 23, or 24 of this act, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding <u>after the award is made</u> to a judgment confirming, vacating without directing a rehearing, or substantially modifying or correcting an award.

As a general matter, New Jersey "disfavors the shifting of attorneys' fees." <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 N.J. 372, 385 (2009). "[A] prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." <u>Ibid.</u> (quoting <u>Packard-Bamberger & Co., Inc. v. Collier</u>, 167 N.J. 427, 440 (2001)); <u>see also</u> <u>R.</u> 4:42-9(a).

Where attorney's fees are authorized, however, "the decision to award or deny attorney's fees rests within the sound discretion of the trial court." <u>Desai v. Bd. of Adj. of Phillipsburg</u>, 360 N.J. Super. 586, 598 (App. Div. 2003). Trial courts have broad discretion in determining "when, where, and under what circumstances counsel fees may be proper." <u>Enright v. Lubow</u>, 215 N.J. Super. 306, 313 (App. Div. 1987). We will only disturb a trial court's award of fees in "the rarest of occasions, and then only because of a clear abuse of

25

discretion." Litton Indus., 200 N.J. at 386 (quoting Packard-Bamberger, 167 N.J. at 444).

Here, there was a statutory basis for the legal fees award. The clear and unambiguous language of N.J.S.A. 2A:23B-25(c) specifically authorized the court to grant such post-award legal fees and costs. Indeed, respondents were the "prevailing party" to a "contested judicial proceeding" to confirm their arbitration award. See N.J.S.A. 2A:23B-25(c).

Appellants' argument that pursuant to the holding in Rock Work, Inc. v. Pulaski Constr. Co., 396 N.J. Super. 344 (App. Div. 2007), respondents were not entitled to the award of legal fees and costs under N.J.S.A. 2A:23B-25(c) was rejected by the trial court and is rejected by us.

In Rock Work, 396 N.J. Super. at 353, we held that the Arbitration Act did not apply to the arbitration at issue, thereby resolving the issue before the appellate court. Nevertheless, we proceeded to analyze the issues, assuming that the Arbitration Act had applied. Although we couched the issue as whether, under N.J.S.A. 2A:23B-25(c), the successful party, the defendant, was entitled to post-award legal fees for obtaining confirmation of the arbitration award, we actually analyzed the issue as whether the defendant was entitled to pre-award legal fees from the arbitrator. We said:

26

Last, we consider [the defendant's] argument that it was entitled to an award of fees incurred in obtaining confirmation of the arbitration award. The only authority cited for that proposition is the Arbitration Act, and in particular N.J.S.A. 2A:23B-25(c) . . . .

We assume that the argument for fees was based on the possibility that we might have decided that the Arbitration Act applied to this case. Since we have accepted [the defendant's] contrary contention, there is no basis for awarding fees. . . .

Were we to assume that the Arbitration Act provisions on attorney's fees applied here, we would still not grant the relief requested by [the defendant] because there was a substantial question about whether the act applied and because we are satisfied for the following reasons that under the act [the defendant] was not entitled to receive an attorney's fee award from the arbitrators.

The Arbitration Act adopts the American Rule except when fee-shifting occurs "by the agreement of the parties to the arbitration proceeding." N.J.S.A. 2A:23B–21(b). The question, as we perceive it, is whether an express agreement is required or whether an implied agreement will do. In this case, [the defendant] concedes that there was no express agreement for fee-shifting but argues that an agreement may be implied because the arbitration agreement called for "all claims, disputes and other matters in question arising out of or relating to" the contract to be resolved in the arbitration, [the unsuccessful party] submitted to AAA arbitration, and the applicable AAA rule, CIAR 46(d), stated that fees may be awarded if both sides ask for them.

[Rock Work, 396 N.J. Super. at 355-56.]

We held that unless the parties had agreed to grant the arbitrator the authority to grant pre-award legal fees, the arbitrator could not do so. Id. at 357. Although we analyzed the issue only under section (b) of N.J.S.A. 2A:23B-21, as it pertains to pre-award legal fees and costs from the arbitrators, we applied that same analysis to conclude that the defendant was not entitled to post-award legal fees and costs from the court for confirming the arbitration award section (c) of the statute.

As Judge Moore pointed out, the Rock Work court's ruling on N.J.S.A. 2A:23B-25(c) was clearly dicta, as it had already determined that the Arbitration Act did not apply. Judge Moore's conclusion that N.J.S.A. 2A:23B-25(c) authorizes the grant of post-award legal fees in a confirmation proceeds, and that the Rock Work holding does not preclude such an award, is supported by the facts and law.

Respondents were also entitled to post-award legal fees and costs because the JVA does, in fact, contain an express agreement on attorneys' fees. Article XVI (c) provides:

> Attorneys' Fees. In the event any action or proceeding is commenced to obtain a declaration of rights hereunder, to enforce any provision hereof, or to seek rescission of this Agreement for default contemplated

herein, whether legal or equitable, the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees in addition to all other relief to which it may be entitled.

The trial court did not err by awarding respondents post-award legal fees and costs under N.J.S.A. 2A:23B-25(c).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

29

A-0777-18T2